## WARNER *v*. STATE OF INDIANA.

[No. 769S170. Filed June 3, 1970. No petition for rehearing filed.]

*Walter A. Cornell* (Deceased), *Charles W. Ardery, Jr.,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Hassett,* Deputy Attorney General, for appellee.

HUNTER, C.J.—This appeal arises out of a proceeding held in the Juvenile Division of the Hamilton County Circuit Court in which appellant, Ted Warner, age 15, was adjudged to be a delinquent child and ordered committed to the Indiana Boys' School until he reaches the age of 21 years. Said proceeding was conducted pursuant to the provisions of Ind. Ann. Stat. § 9-3215 (1969 Supp.) which provides for the conduct of hearings to determine the merits of a delinquency petition and for the judgments which may be entered therein. A summary of the facts in this cause follows.

Ted Warner was a student at the Hamilton Southeastern High School in Noblesville, Indiana. On March 18, 1969, Warner was in attendance at a mathematics class presented by Mr. Ervin E. Dinn, a teacher at said school. Mr. Dinn was the *only witness* to testify at Warner's delinquency hearing.

According to Mr. Dinn, Ted Warner and one Randy Ferguson, a fellow student, got up in the middle of his mathematics class at approximately 2:25 P.M. on March 18th and left the room without permission. Under ordinary circumstances Mr. Dinn requires his students to ask permission before leaving the classroom, but in the event of emergency, e.g. sickness, the students are allowed to leave without permission provided they sign out before doing so. In this case neither Warner nor his companion Ferguson asked permission or signed out.

When Mr. Dinn noticed the two boys leaving the room, he interrupted his class and pursued them out the door and down the corridor. He stated that he walked "pretty fast" to catch up with them. He accosted the boys approximately ten feet from the classroom door where, according to Dinn, "he put his hands on his [the appellant's] shoulders and backed him up against the wall to stop him."

Appellant then allegedly struck Mr. Dinn in the stomach causing him to double up in pain. At this point Dinn ordered

appellant to report to the principal's office for disciplining. The other student, Randy Ferguson, returned to class on his own without further incident. A preliminary inquiry was held in the above matter in the Juvenile Division of the Hamilton Circuit Court pursuant to Ind. Ann. Stat. § 9-3208 (1969 Supp.). As a result of that inquiry, the court ordered that a petition of delinquency be filed and set the same for a formal hearing for April 4, 1969.

Appellant's assignments of error in this appeal relate to both the conduct of the formal delinquency hearing, as well as to the procedures followed by the Juvenile Court in matters preliminary thereto. The following is a summary of appellant's objections:

(1) Formal jurisdiction of the subject matter was never acquired by the Juvenile Court because:

(a) the Court never authorized a probation officer to file a petition charging appellant with delinquency;

(b) no petition alleging delinquency on the part of appellant was ever filed by anyone designated "Probation Officer" but rather by the State of Indiana;

(c) the purported petition did not contain specific facts which alleged either an act or status of delinquency; and

(d) the purported petition was not properly verified.

(2) The Court did not obtain jurisdiction of the juvenile or his mother or stepfather in that the purported summons served upon them totally failed to notify them with any particularity of the delinquent act with which the appellant was charged or of the petition purportedly filed, contrary to Ind. Ann. Stat. § 9-3209 (1956 Repl.).

(3) The Court denied the appellant due course of law under the Indiana Constitution and due process of law under the 14th Amendment to the U. S. Constitution in the following particulars:

(a) It failed to require the alleged misconduct of the juvenile to be set out with particularity in the petition;

(b) The Court failed to inform the Juvenile specifically of said alleged misconduct by way of summons;

(c) The Court failed to inform the Juvenile of the possible penalties involved in connection with a finding of delinquency in this cause;

(d) The Court failed to inform the juvenile of the right to trial by jury.[1]

(4) The appellant did not receive a fair trial in that the person who signed the petition against the juvenile, and who served as court reporter in the case, was the wife of the judge who heard the case.

(5) The Court denied the juvenile a fair trial by denying him the effective representation of counsel contrary to the mandates of both the Indiana and U. S. Constitutions in the following particulars:

(a) The Court did not properly advise the juvenile and his mother of his right to counsel and did not appoint counsel on the record after intimating to the juvenile and his mother that he would do so;

(b) The Court required the juvenile to go to trial on the very day on which counsel appeared while counsel was under the impression that the matter was merely a preliminary hearing;

(c) The Court improperly precluded cross-examination concerning a vital issue in the cause, and indicated further that it would not consider a defense based on self-defense; and

(d) The Court indicated a desire to terminate the cause due to the press of court business after only one witness had been heard.

(6) The Court erred in committing appellant to the Indiana Boys' School without having before him a written pre-hearing investigation report pursuant to the provisions of Ind. Ann. Stat. § 9-3113a (1969 Supp.), in that said pre-hearing investigation report, filed on the day of the delinquency hearing, was unsigned and contained conclusions without supporting facts; and

(7) The finding and decision of the Court are not sustained by sufficient evidence and are contrary to law. The

---

1. This Court has recently decided that the provision at Ind. Ann. Stat. § 9-3215 (1969 Supp.) providing that delinquency hearings shall be held without a jury is constitutional. *Bible* v. *State* (1970), 253 Ind. 373, 254 N.E. 2d 319.

standard of proof should be beyond a reasonable doubt even though the state has not met its burden of proof measured by the current standard to-wit: proof by a preponderance of the evidence.

It shall be unnecessary, for the reasons stated below, for this court to deal with each of the above-summarized allegations of error presented by appellant. This court is compelled to reverse the judgment in this cause and remand the same in view of the most recent pronouncement by the U. S. Supreme Court in the area of the rights of juveniles in state delinquency proceedings.

In the case of *In the Matter of Samuel Winship* (1970), 397 U.S., 358, 25 L. Ed. 2d 368, that Court held that juveniles are constitutionally entitled to the standard of "proof beyond a reasonable doubt" during the adjudicatory stage when the juvenile is charged with an act which would constitute a crime if committed by an adult. Heretofore this state and most others had imposed the evidentiary standard in juvenile matters of proof by a fair preponderance of the evidence.

In announcing the decision of the U. S. Supreme Court, Mr. Justice Brennan states:

" 'There is always in litigation a margin of error, representing error in factfinding [in a criminal trial], which both parties must take into account. Where one party has at stake an interest of transcending value—as a criminal defendant his liberty—this margin of error is reduced as to him by the process of placing on the other party the burden of . . . persuading the factfinder at the conclusion of the trial of his guilt beyond a reasonable doubt' . . . The same considerations which demand extreme caution in factfinding to protect the innocent adult apply as well to the innocent child . . . We made clear in that decision [*In Re Gault*] (1967), 387 U. S. 1, 18 L. Ed. 2d 527 that civil labels and good intentions do not themselves obviate the need for criminal due process safeguards in juvenile courts, for '[a] proceeding where the issue is whether the child will be found to be "delinquent" and subjected to the loss of his liberty for years is comparable in seriousness to a felony prosecution.' Id., at 36, 18 L. Ed. 2d at 551." 25 L. Ed. 2d at 375, 376.

The decision the Court reaches, although one which this Court very reluctantly recognizes, is clear and unequivocal:

> ". . . the constitutional safeguard of proof beyond a reasonable doubt is as much required during the adjudicatory stage of a delinquency proceeding as are those constitutional safeguards applied in *Gault*—notice of charges, right to counsel, the rights of confrontation and examination, and the privilege against self-incrimination." 25 L. Ed. 2d at 377-78.

Accordingly, we hereby adopt the reasonable doubt standard as the test to be applied in adjudicating the delinquency of a child in cases *where the offender commits an act which, but for his age, would constitute a crime.*[2] The application of this standard in the determination of delinquency based on any of the other grounds set out in § 9-3204, *supra,* is patently impractical, and we believe it would seriously interfere with the juvenile court's effectiveness in carrying out its purposes. This is especially true in cases dealing with the parent-child relationship and with a juvenile's relationship with other juveniles. This opinion should in no way be construed to expand the reasonable doubt standard to these other areas.

On rehearing, the Juvenile Court is hereby directed to conduct a full, formal hearing in this matter in accordance with the provisions of § 9-3215, *supra,* and, upon a determination of the relevant facts in the case, the Court is to determine whether there is substantial evidence of probative value to prove beyond a reasonable doubt the existence of each element of the offense charged. A review by this Court of a judgment of delinquency, *where the delinquency is based on the commission of an act which, if committed by an adult would be a crime,* will be made now by necessity on the same terms as apply in the review of criminal appeals. E.g. see

---

2. No reason or basis is presented by the Court in *Winship* for limiting the application of the reasonable doubt standard to the proof of delinquency based on a crime. In Indiana, as in most jurisdictions, the juvenile judge can enter the very same judgment for such offenses as truancy or incorrigibility as he can for the commission of a criminal offense.

*Easton* v. *State* (1967), 248 Ind. 338, 228 N. E. 2d 6; *Baker* v. *State* (1956), 236 Ind. 55, 138 N. E. 2d 641.

This court would be remiss in its duties if it disposed of this case without some comment as to the totality of events surrounding the proceedings below. We are not unmindful of the deplorable rise in the frequency of acts of violence committed by students against teachers in our schools in Indiana and throughout the nation. The reports of these incidents in official publications as well as in newspapers and over radio-TV are often fraught with shocking brutality and tragic consequences. Where school authorities deem the situation in a school or with a particular pupil so intolerable that they feel it necessary to invoke the aid of our courts for remedial action, we should stand ready to do whatever is judicially appropriate to restore peace and order to the academic institution involved.

Notwithstanding our strong sentiments in this regard, we believe with equal resolve and conviction, that in order for our judicial system to be effective, it must be respected, and in order for it to be respected it must be fair. Convicting a man accused for a dastardly crime by an unfair proceeding or one which appears to be unfair may win favor for the court among the outraged citizenry at the time of the alleged offense. But over the long run, after time has placed events in their proper perspective, the inequitable conduct of the court will invariably prevail in its effect on public opinion, the end result of which will be the overall diminution of the stature of the judiciary. In short, the more emotionally charged or heinous the crime, the greater is the need for judicial circumspection in the conduct of the trial.

In the record before us we note several instances wherein we believe the Court could have improved its conduct of the proceedings so as to insure that, irrespective of the disposition of the cause, the appellant would at least believe that he had received fair treatment from the court.

To begin with, at the preliminary hearing conducted in this cause on March 21, 1969, the Court ordered a delinquency petition filed and informed the appellant Warner that the court was doing so for the following reasons:

"Here's why—there's been considerable charges and counter-charges of Assaults and Batteries going on in the Schools; that is Boys hitting Teachers, and Ted's not the first one, and probably won't be the last one, and *I don't intend to make an example out of Ted, or anything like that, but I think from what's going on down there should be aired in Court for your information. There's been other incidents with this same Teacher with other Boys,* and they've expelled some boys from School over it." (our emphasis)

At the formal hearing, counsel for appellant sought to cross-examine the victim, Mr. Dinn, in an attempt to show his previous conduct with respect to similar incidents involving students at Hamilton Southeastern High School. The Court, in response to an objection made by prosecutor to this line of questioning stated:

"The Court: What would that have to do with Ted, here, hitting the teacher?

Attorney: Well, that shows the teachers' previous provocations.

The Court: You maintain there's provocations for a student to hit a teacher?

Attorney: Yes, when he shoves him against the wall, that's provocation.

The Court: I'll sustain the objection. I can't get it through my head, what Tena would have to do with it. I can't imagine any act, that would be sufficient to provoke a student to strike a Teacher, or a Private to strike a Sergeant, or a Sergeant to hit the Captain, or a Captain to slug the Admiral. *There's no provocation."* (our emphasis)

This colloquy was followed immediately by the following:

"The Court: *We have quite a few people waiting here, and*

*I think I've heard enough of this.* Did you want to put on any witnesses, Mister Day? (our emphasis)

Attorney: No I think not.

The Court: Show, the Court finds Ted Warner to be a delinquent child, and orders him committed to the Trustees of the Indiana Boys' School until he's Twenty One years of age. You'll remain in the custody of the Sheriff for transportation to boys School, thank you for coming in."

Not only does the record indicate the Court's inconsistency with respect to its announced intention to get out in the open the entire matter of the incidents of violence at the School, and concerning this very same teacher, but it also indicates that the Court would not accept the theory of provocation either in mitigation or in defense of the charges against appellant. Further, the Court by proclaiming that it had "had enough of this" and that it had quite a few people waiting in other matters, could not have helped but create an atmosphere of impatience in the courtroom, especially in the eyes of a 15 year old young man.

For most young offenders, their first contact with the judicial processes of our society occurs in the juvenile court. It is particularly important that the impression the juvenile receives in his initial courtroom experience is one of solicitude and fairness. *In re Adams* v. *State* (1963), 244 Ind. 460, 193 N. E. 2d 362. The juvenile court's effectiveness in rehabilitating the allegedly delinquent child, and in helping him avoid the inevitable life of crime depends in large measure on what has become the cornerstone of our juvenile system, that is, *fair treatment. Summers* v. *State* (1967), 248 Ind. 551, 230 N. E. 2d 320.

It is not difficut to surmise that the appellant, who based on the record in this case, had no prior offenses, must have been somewhat less than impressed with the fairness of the Court, upon hearing the Judge in quick succession[1] announce

that "he had had enough of this" and then commit him to the Indiana Boys' School. This court is admittedly at a disadvantage when it endeavors to reconstruct from an impersonal and unemotional record, the atmosphere or judicial tenor of a hearing or trial. However in this case we believe the record speaks for itself.

Judgment reversed.

Givan, J., concurs; DeBruler and Jackson, JJ., concur in result; Arterburn, J., dissents with opinion.

### DISSENTING OPINION

ARTERBURN, J.—The majority opinion reverses a juvenile proceeding in which a boy was charged with hitting a teacher. As I read the majority opinion, it reverses on the basis that the standard beyond a reasonable doubt was not observed by the trial court. I have gone through the briefs and the opinion and I cannot find that there is any place that it can be said that the judge failed to observe the standard of proof beyond a reasonable doubt. We may not presume to the contrary unless it is apparent in the record that the judge refused to observe such proper standards. There is no record showing that the trial court used a preponderance of the evidence as a standard instead of beyond a reasonable doubt as a standard.

I further point out that the evidence is uncontradicted. The juvenile struck the teacher in apparent anger because the teacher attempted to stop him from leaving the classroom without permission. There is no contradiction about this evidence. If it is uncontradicted, it is proof beyond a reasonable doubt, and we cannot reverse because of an insufficiency of the evidence. I cannot go along with the reversal of a case on a point that has no merit.

NOTE.—Reported in 258 N. E. 2d 860.