**Michael A. WALKER, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 34A02–9502–CR–96.

Court of Appeals of Indiana.

Feb. 21, 1996.

Charles H. Scruggs and Stephanie C. Doran, Scruggs & Doran, Kokomo, for appellant.

Pamela Carter, Attorney General of Indiana and Janet L. Parsanko, Deputy Attorney General, Indianapolis, for appellee.

## OPINION

STATON, Judge.

Michael A. Walker ("Walker") was found guilty after a bench trial of possession of marijuana, a class A misdemeanor[1], for which he was sentenced to one year in prison and the suspension of his driver's license for 180 days.[2] In his appeal, Walker presents two issues for our review which we restate as follows:

I. Whether the trial court erred in denying his motion to suppress evidence.

II. Whether the trial court erred in suspending his driving privileges pursuant to IND.CODE § 35-48-4-15.

We affirm.

The facts most favorable to the State reveal that on August 14, 1994, Kokomo police officers Kevin Ogle and Norman Tate were dispatched to a tavern to investigate a fight involving weapons. After arriving at the scene, a witness informed Officer Ogle that Walker had struck a bar employee with a pool cue. Officer Ogle placed Walker against his patrol car and conducted a patdown search of Walker's outer clothing. During the search, Officer Ogle sensed an article in Walker's right hip pants pocket which he believed to be a bag of marijuana. Officer Ogle removed the item from Walker's pocket which was a plastic bag later determined to contain marijuana. Walker was arrested and charged with possession of marijuana.

## I.

### Motion to Suppress

Walker contends that the trial court erred in denying his motion to suppress the evidence of the marijuana. We note that

1. IND.CODE § 35-48-4-11 (1993).

2. Walker's prison sentence was suspended and his entire sentence was stayed pending this appeal.

3. The Fourth Amendment provides:

the trial court has broad discretion in ruling on the admissibility of evidence and in determining its relevancy. We will disturb its ruling only upon a showing of abuse of that discretion. *Kremer v. State*, 514 N.E.2d 1068, 1073 (Ind.1987), *reh. denied.* Relevant evidence is not inadmissible merely because it is prejudicial. *Id.*

Walker argues that the seizure of the marijuana was the product of a search which went beyond the scope of the Fourth Amendment to the United States Constitution[3] and as permitted by *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In *Terry*, the United States Supreme Court determined that the Fourth Amendment permits a police officer to conduct a "stop" and "frisk", in which a police officer may, in appropriate circumstances and in an appropriate manner, approach a person for purposes of investigating possible criminal behavior without probable cause to make an arrest, and execute a reasonable search of the person for weapons for the officer's own protection. *Terry, supra,* at 22 and 27, 88 S.Ct. at 1880 and 1883.

The Court has further determined that the seizure of contraband detected during the lawful execution of a *Terry* search is permissible. *Michigan v. Long*, 463 U.S. 1032, 1050, 103 S.Ct. 3469, 3481, 77 L.Ed.2d 1201 (1983) (under "plain view" doctrine, police officer lawfully seized contraband while conducting lawful *Terry* search of interior compartment of automobile). In *Minnesota v. Dickerson*, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), the Court extended this doctrine to include contraband that is detected through the officer's sense of touch. Adopting this "plain feel" doctrine, the Court opined:

If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context.

*Dickerson, supra,* 508 U.S. at 375–376, 113 S.Ct. at 2137 (footnote omitted). The Court explained that regardless of whether the officer detects contraband by sight or by touch, the requirement of the Fourth Amendment that the officer have probable cause to believe the item is contraband before seizing it ensures against excessively speculative seizures. *Id.*

Nevertheless, in *Dickerson,* the Court determined that the police officer's continued search of the defendant's pocket to feel a small lump which he then determined to be crack cocaine, *after* concluding that no weapons were present, was not authorized under *Terry* and, thus, the subsequent seizure of the cocaine was unconstitutional. *Id.* at 378, 113 S.Ct. at 2139. Quoting the Minnesota Supreme Court, the Court noted:

> ... After a close examination of the record, [the court] held that the officer's own testimony "belies any notion that he 'immediately'" recognized the lump as crack cocaine.... Rather, the court concluded, the officer determined that the lump was contraband only after "squeezing, sliding and otherwise manipulating the contents of the defendant's pocket"—a pocket which the officer already knew contained no weapon.

*Id.* at 378, 113 S.Ct. at 2138 (citations omitted).

Walker relies on *Dickerson* to support his claim that the search exceeded the scope of *Terry* because Officer Ogle "never believed the marijuana to be a weapon ... and knew that the pocket did not contain a weapon as he was squeezing, feeling and otherwise manipulating the item." Appellant's Brief at p. 11. The State counters that, unlike the officer in *Dickerson,* Officer Ogle did not manipulate the item before determining that it was marijuana, and that he discovered the marijuana during the course of the *Terry* search.

At the suppression hearing, Officer Ogle testified that he conducted his patdown search of Walker to determine if he pos-sessed any weapons. During his search, he felt an article in Walker's right hip pants pocket which he believed to be a bag a marijuana. He stated, "I felt the object in his pocket was consistent to what I've felt many times before to be marijuana ... I believed it to be marijuana when I felt it the first time." Record, pp. 42, 44. At the trial, Officer Ogle testified that during his weapons search, when he sensed the item, he knew it was not a weapon and based upon his experience, he thought the item was a bag a marijuana. He indicated that he squeezed the items with his fingers but did not manipulate it in any way. More importantly, when asked the period of time between his realization that the item was not a weapon but marijuana, Officer Ogle responded, "Instantaneously." Record, pp. 76–77.

■ Unlike in *Dickerson,* where the incriminating nature of the contraband only became apparent to the officer after he conducted a second non-weapon search, here, Officer Ogle's determination that the item was contraband was contemporaneous with his weapons search. Thus, the seizure of the marijuana, an item whose identity was immediately apparent to Officer Ogle, occasioned no further invasion of privacy beyond that already authorized by the officer's search for weapons and, thus, its warrantless seizure was justified under *Terry. Dickerson, supra,* at 375–378, 113 S.Ct. at 2137–2138. *See also Bratcher v. State,* 661 N.E.2d 828 (Ind. Ct.App.1996); *Drake v. State,* 655 N.E.2d 574, 577 (Ind.Ct.App.1995) and *compare In the Matter of C.D.T.,* 653 N.E.2d 1041 (Ind. Ct.App.1995) (seizure of contraband not justified under *Terry* because State failed to sustain burden of proving that incriminating character of plastic bag containing cocaine was immediately apparent to police officer during weapons search).

Accordingly, we conclude that Officer Ogle's seizure of the marijuana was justified under *Terry* and that the trial court did not abuse its discretion when it denied Walker's motion to suppress the marijuana evidence.

## II.

### *Suspension of Driver's License*

Walker also contends that the trial court erred in suspending his driver's license pursuant to IND.CODE § 35–48–4–15 (Supp. 1995). IC 35–48–4–15(a) provides:

If a person is convicted of an offense under section 1, 2, 3, 4, 5, 6, 7, 10, or 11 of this chapter, or conspiracy to commit an offense under section 1, 2, 3, 4, 5, 6, 7, 10, or 11 of this chapter, the court shall, in addition to any other order the court enters, order that the person's:

(1) operator's license be suspended;

(2) existing motor vehicle registrations be suspended; and

(3) ability to register motor vehicles be suspended;

by the bureau of motor vehicles for a period specified by the court of at least six (6) months but not more than two (2) years.

Walker relies upon this court's decision in *Mitchell v. State*, 638 N.E.2d 1299 (Ind.Ct. App.1994) to support his contention that suspension of his driver's license violates his fundamental right to procedural and substantive due process.[4] However, the Indiana Supreme Court recently disagreed, vacating our decision in *Mitchell*, and determined that license suspension under IC 35–48–4–15 violates neither procedural due process nor substantive due process. *See Mitchell v. State*, 659 N.E.2d 112 (Ind.1995).

In so doing, the Indiana Supreme Court stated that the language of IC 35–48–4–15 was unambiguous, leaving no room for interpretation and, in addition, the statute provided for procedural safeguards, . . . "as one can only have one's driver's license suspended under this statute after a lawful conviction and a full sentencing hearing." *Mitchell*, 659 N.E.2d at 115. Furthermore, the court determined that the statute did not violate substantive due process because driving privileges are an entitlement, not a fundamental right, and the State need only show that the statute bears a rational relationship to a legitimate state interest. *Id.* at 115. The court noted that in addition to punishing lawbreakers, the statute deters criminal conduct by denying a convicted drug dealer the privilege of driving and the privilege of using public roads and, thus, these state interests bore a rational relationship to the statute.[5] *Id.*

Although we maintained in *Mitchell* that due process requires clear and convincing evidence that the operation of a motor vehicle must have contributed to the underlying criminal conduct, we are compelled to follow the Indiana Supreme Court. Accordingly, we reject Walker's contention that suspension of his driving privileges pursuant to IC 35–48–4–15 violates his fundamental right to due process.

Affirmed.

GARRARD and FRIEDLANDER, JJ., concur.

---

**4.** In *Mitchell*, we determined that substantive due process required clear and convincing evidence that the operation of a motor vehicle contributed to the criminal conduct at issue. *Mitchell, supra*, at 1300. We stated that without a nexus between the involvement of a motor vehicle and the criminal offense, the underlying purpose of IC 35–48–4–15, highway safety, was not served and, thus, suspension under the statute did not comport with due process. *Id. See also Maher v. State*, 612 N.E.2d 1063 (Ind.Ct.App. 1993). Likewise, Walker contends that because the operation of a motor vehicle was in no way connected to his possession of marijuana, suspension of his driving privileges violates his fundamental right to due process.

**5.** Additionally, the court rejected the notion that due process requires a nexus between the use of a motor vehicle and the underlying criminal conduct. The court stated, "We are not here persuaded that a penal statute which temporarily restricts one's use of the public domain as a punishment, which is neither cruel nor unusual and which treats similarly situated individuals equally, must survive this additional test under the Due Process Clause." 659 N.E.2d at 116.