**In the Matter of D.D., a Child Alleged to be a Delinquent Child, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

No. 82A01–9602–JV–59.

Court of Appeals of Indiana.

July 8, 1996.

Jeffery L. Lantz, Jon K. Aarstad, Evansville, for Appellant.

Pamela Carter, Attorney General, Randi F. Elfenbaum, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

D.D., a juvenile, appeals from the juvenile court's order which adjudicated him a delinquent child based upon his commission of two acts which would be crimes if committed by an adult: Possession of Cocaine, a Class D felony, and Resisting Law Enforcement, a Class A misdemeanor. The sole issue presented for our review is whether the court erred when it denied D.D.'s motion to suppress evidence of cocaine seized during a warrantless search of his person.

We affirm in part, reverse in part and remand with instructions.

### FACTS

On June 21, 1995, during a routine patrol, Evansville Police Officers Stephen Green and Bryan Talsma observed D.D. and two other individuals sitting on the front steps of an apartment building. The owner of the building had previously signed a waiver with the city allowing police officers to enforce the no trespassing signs posted on the property. The officers exited their vehicle and approached the individuals to see what the individuals were doing and whether they belonged on the property. Officer Green asked the individuals to identify themselves. D.D. told Officer Green that his name was "Carlos." Officer Green became suspicious because he had encountered D.D. on prior occasions and knew that D.D. had given him a false name. Officer Green also noticed that D.D. was acting nervous. Based upon this suspicious behavior, Officer Green asked D.D. to step onto the porch and he began to conduct a patdown search of D.D.'s outer garments for weapons. During the patdown search, Officer Green felt a lump in the small watch pocket of D.D.'s pants. Officer Green reached in the pocket and withdrew a bag of small white rocks which appeared to be cocaine. D.D. immediately fled from the officers. Although Officer Talsma pursued him, D.D. was not apprehended at that time. The substance seized from D.D.'s pocket was later tested and confirmed to be 2.5 grams of cocaine.

The State filed a delinquency petition and alleged that D.D. had committed two acts, possession of cocaine and resisting law enforcement, each which would have been crimes if committed by an adult. During the hearing, D.D. objected to Officer Green's testimony and moved to suppress evidence of the seized cocaine. The trial court denied D.D.'s motion. At the conclusion of the hearing, the trial court adjudged D.D. delinquent on both counts. D.D. appeals.

## DISCUSSION AND DECISION

### Standard of Review

Our standard of review of a juvenile adjudication is the same as if the crime had been committed by an adult. *Warner v. State*, 254 Ind. 209, 214, 258 N.E.2d 860, 864 (1970). The trial court has broad discretion in ruling on the admissibility of evidence, and we will not disturb its decision absent a showing of an abuse of that discretion. *Kremer v. State*, 514 N.E.2d 1068, 1073 (Ind. 1987). Adult criminal procedure rules apply in delinquency proceedings. *C.D.T. v. State*, 653 N.E.2d 1041, 1044 (Ind.Ct.App.1995). In light of this standard, we consider D.D.'s motion to suppress.

### Motion to Suppress

D.D. contends that the trial court erred when it denied his motion to suppress the evidence of cocaine. Specifically, D.D. argues that the warrantless search of his person and the seizure of the cocaine were beyond the scope of the Fourth Amendment and the "plain feel" doctrine adopted by the United States Supreme Court in *Minnesota v. Dickerson*, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). We agree.

This case illustrates the practical difficulty police face in applying the "plain feel" doctrine on the street in a manner that does not violate an individual's Fourth Amendment right against unreasonable searches and seizures. As necessary background, we begin with *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), in which the Supreme Court recognized an exception to the warrant requirement. The Court determined that the Fourth Amendment permits a police officer, without a warrant or probable cause, to conduct a brief "stop" and "frisk" of a person for investigative purposes if the officer has reasonable suspicion, based on specific and articulable facts, that criminal activity "may be afoot." *Id.* at 30, 88 S.Ct. at 1884, 20 L.Ed.2d at 911. The *Terry* "frisk" is limited to a protective search of the suspect's person for weapons which might be used against the officer. *Id.* at 23 and 27, 88 S.Ct. at 1881 and 1883, 20 L.Ed.2d at 907 and 909.

The Supreme Court has also held that contraband detected in "plain view" during a lawful *Terry* search may be seized. *Michigan v. Long*, 463 U.S. 1032, 1050, 103 S.Ct. 3469, 3481, 77 L.Ed.2d 1201, 1220 (1983). Then, in *Dickerson*, the Supreme Court extended the "plain view" doctrine to include the "plain feel" doctrine and determined that police officers may seize contraband detected through the officer's sense of touch during the type of protective patdown search contemplated by *Terry*. *Dickerson*, 508 U.S. at 375–76, 113 S.Ct. at 2137, 124 L.Ed.2d at 346. The Court reasoned:

> If a police officer lawfully pats down a suspect's clothing and feels an object whose contour or mass makes its identity *immediately apparent*, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context.

*Id.* (footnote omitted), (emphasis added). The parties here cite three recent opinions of this court, each applying the "plain feel" doctrine to the specific facts of the search and seizure in question. *Walker v. State*, 661 N.E.2d 869 (Ind.Ct.App.1996); *Bratcher v. State*, 661 N.E.2d 828 (Ind.Ct.App.1996); *C.D.T. v. State*, 653 N.E.2d 1041 (Ind.Ct.App. 1995). While the outcome of each case varies, it is clear that the dispositive issues in each case were: (1) whether the contraband was detected during the initial search for weapons rather than during a further search, and (2) whether the identity of the item was immediately apparent to the officer.

In *Walker*, the officer's determination of the item as contraband was "contemporaneous" with his weapons search. *Walker*, 661 N.E.2d at 871. When asked the period of time between his realization that the item was not a weapon but was marijuana, the officer responded, "Instantaneously." *Id.* Accordingly, we held that the seizure was valid and that the trial court did not abuse its discretion when it denied a motion to suppress the marijuana evidence.

In *Bratcher*, the officer testified that he felt an item during his patdown of the sus-

pect's outer clothing for weapons and "figured it was a bag containing marijuana." *Bratcher*, 661 N.E.2d at 832. It was after that determination that the officer "pulled [the contraband] out from [the suspect's] right front pants pocket." *Id.* We concluded that the testimony indicated that the officer determined the object was a bag of marijuana as soon as he touched it and, thus, that the State met its burden of proving that the incriminating character of the item was immediately apparent to the officer. *Id.* Because the officer discovered the marijuana during the search for weapons and the incriminating character was immediately apparent to the officer, the seizure of the marijuana was lawful. *Id.* at 833.

A different situation was presented in *C.D.T.* where, at the time the cocaine evidence was seized, the officer had already ascertained that the juvenile suspect possessed no weapons yet continued to search the juvenile. *C.D.T.*, 653 N.E.2d at 1047. We determined that the officer's continued search after the officer had dispelled his reasonable fear for his safety went beyond the scope of *Terry* and, therefore, that the further intrusion of reaching into the juvenile's pocket and seizing the contraband was impermissible. *Id.*

■ In the present case, although the cocaine evidence was seized during Officer Green's patdown search for weapons, the State has failed to prove that the incriminating character of the evidence was immediately apparent to Officer Green. Officer Green testified on direct examination as follows:

As I was starting to pat him down I felt *a little thing* in his top ... he's got a little watch pocket in his pants right here ... *so I reached in and grabbed it to see what it was* and it looked to me like cocaine.

Record at 50 (emphasis added). Defense counsel moved to suppress any evidence regarding the seized cocaine and asked some preliminary questions during which Officer Green answered that the bulge "felt to me like contraband." Record at 51. Thereafter, the trial court denied D.D.'s motion to suppress.

During the subsequent direct examination, Officer Green modified and expanded upon his original testimony in response to the following questions posed by the State:

Q. Before reaching in the pocket what did you believe that object to be?

A. Contraband.

Q. What, specifically?

A. Probably cocaine or marijuana.

Record at 62. Then, the following colloquy occurred between Officer Green and defense counsel:

Q. You believed it to be contraband and you've testified now that you believed it to be cocaine or crack or what?

A. Or marijuana.

Q. Or marijuana.

A. It felt like it.

Q. And what did you ... how did you determine that it was cocaine or marijuana?

A. Afterwards?

Q. No. Before you reached in the pocket.

A. Just from previous experience ... that's what it felt like.

Record at 62–63. Thus, although the court had already denied the motion to suppress, the State continued to question Officer Green in an attempt to buttress his initial testimony that he merely "felt a little thing" in D.D.'s pocket and that he had to pull it out "to see what it was." However, the trial court denied the motion to suppress after hearing only the officer's *initial* testimony, and that testimony was insufficient on its face. Even Officer Green's later testimony fails to establish that he recognized an object "whose contour or mass [made] its identity immediately apparent." *Dickerson*, 508 U.S. at 375–76, 113 S.Ct. at 2137, 124 L.Ed.2d at 346. His subsequent general declaration that the bulge felt like "contraband" is insufficient.

■ "Contraband" is a broad categorical and convenient term that does not connote a specific object. Accordingly, use of the term "contraband" is legally insufficient to satisfy the plain feel doctrine, as contraband can include any number of distinct and dissimilar objects with differing contours and masses. To justify a warrantless seizure, *Dickerson*

requires that the identity of the specific object be immediately apparent due to its unique character. Officer Green's testimony does not reveal that, based upon his sense of touch, he immediately recognized the bulge to be a bag of "rock" cocaine. His testimony that he "felt a little thing" and later that he thought it "felt like contraband" and was "probably cocaine or marijuana" falls far short of an immediate determination that the item in D.D.'s pocket was cocaine. As we have noted, Officer Green admitted that he did not know that the bulge was contraband of any kind until after he had pulled it out "to see what it was." Record at 50.

Regardless of whether the officer detects the contraband by sight or touch, the requirement of the Fourth Amendment that the officer have probable cause to believe the item is contraband before seizing it ensures against excessively speculative seizures. *Walker*, 661 N.E.2d at 871 (citing *Dickerson*, 508 U.S. at 376, 113 S.Ct. at 2137, 124 L.Ed.2d at 346). Based upon the record before us, we cannot say that Officer Green had probable cause to believe that the item in D.D.'s pocket was contraband, as the evidence does not support a conclusion that the identity of the cocaine in D.D.'s pocket was immediately apparent to Officer Green. Green's intrusion when he reached into D.D.'s pocket and seized the cocaine was not justified under *Terry*. We will not condone the use of a *Terry* protective search for weapons as a mere pretext to search for evidence.

Contrary to the dissent's assertion, we need not defer to Officer Green's "subjective" probable cause determination nor to the trial court's conclusion that Officer Green possessed probable cause. In *Ornelas v. United States*, — U.S. —, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996), the Supreme Court recently held in a 8 to 1 decision that determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal. *Id.* at —, 116 S.Ct. at 1663. The Court reasoned that de novo appellate review "tends to unify precedent and will come closer to providing law enforcement officers with a defined 'set of rules which, in most instances, makes it possible to reach a correct determination beforehand as to whether an invasion of privacy is justified in the interest of law enforcement.'" *Id.* at —, 116 S.Ct. at 1662. (citing *New York v. Belton*, 453 U.S. 454, 458, 101 S.Ct. 2860, 2863, 69 L.Ed.2d 768, 773 (1981). Under our de novo standard of review, we conclude that Officer Green lacked probable cause to seize the cocaine. Accordingly, we hold that the trial court erred when it denied D.D.'s motion to suppress.

■ We note that we are not persuaded by the State's assertion that the police would have likely discovered the cocaine because they would have arrested D.D. for trespass and then conducted a search incident to a lawful arrest. *See Chimel v. California*, 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685, 694 (1969). As we noted in *C.D.T.*, probable cause to arrest depends upon whether, at the time, "the facts and circumstances within the arresting officers' knowledge of which they had reasonably trustworthy information were sufficient to warrant a prudent person in believing that the suspect had committed or is committing an offense." *C.D.T.*, 653 N.E.2d at 1047 (quoting *Adams v. Williams*, 407 U.S. 143, 148, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612, 618 (1972)). Based on the very limited facts known to Officer Green at the time he arrived at the scene, and absent any inquiry into whether D.D. had a right to be present at the apartments, there is no evidence that Officer Green had probable cause to arrest D.D. for the crime of trespass.

■ Officer Green also lacked probable cause to arrest D.D. for possession of cocaine. Officer Green testified that he had no reason to believe that any drug offense was being committed at the time he arrived at the scene. Record at 63. Probable cause to arrest for possession of cocaine did not exist until after Officer Green seized the cocaine evidence. A search which provides probable cause to arrest cannot be justified as a search incident to arrest. *C.D.T.*, 653 N.E.2d at 1047 (citing *Smith v. Ohio*, 494 U.S. 541, 543, 110 S.Ct. 1288, 1290, 108 L.Ed.2d 464, 467 (1990)).

1255

## CONCLUSION

The trial court committed reversible error when it denied D.D.'s motion to suppress and, thus, D.D.'s delinquency adjudication based upon possession of cocaine is vacated. Because the cocaine evidence was unnecessary to support D.D.'s adjudication for resisting law enforcement, the juvenile court's finding of delinquency on that count is affirmed.

Affirmed in part and reversed in part with instructions for the juvenile court to vacate D.D.'s delinquency adjudication for possession of cocaine and to modify his punishment accordingly.

RILEY, J., concurs.

BAKER, J., dissents with separate opinion.

BAKER, J., dissenting.

I respectfully dissent from the majority's determination that the trial court erred in denying D.D.'s motion to suppress. To the contrary, I find that Officer Green was authorized to search D.D.'s pocket and thus, the cocaine discovered therein was admissible. As the majority correctly notes, in *Minnesota v. Dickerson*, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), the U.S. Supreme Court extended the "plain view" doctrine to include the "plain feel" doctrine, which provides that if, during a weapons search, an officer feels a protrusion which he recognizes to be contraband, the officer is entitled to seize it. Further, the U.S. Supreme Court has recently stated that appellate review of questions of whether an officer had probable cause to seize contraband is de novo. *Ornelas v. United States,* —— U.S. ——, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). The Court noted that "a reviewing court should take due care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Id.* at ——, 116 S.Ct. at 1663. Thus, the Court has mandated a standard of de novo review which appears to be slightly deferential in nature.

In light of such a standard, the specific facts of this case show that Officer Green confronted three youthful trespassers, one of whom he recognized as D.D. When questioned by Officer Green, D.D. misidentified himself as "Carlos" and acted nervous. Further, while Officer Green was searching D.D. for weapons, he felt a bulge in D.D.'s pocket that he believed to be drugs. Hence, my review of the record leads me to conclude that Officer Green was entitled to search D.D.'s pocket and seize the cocaine inside it. Accordingly, I believe that the trial court properly denied D.D.'s motion to suppress the cocaine and admitted it into evidence.

Additionally, I write to comment that it might appear that the test for determining whether an officer, who detects a protrusion while performing a weapons search of a suspect, may seize the item causing the protrusion is an objective test focusing on whether a reasonable officer of normal experience and expertise would believe that the protrusion was contraband. However, in *Dickerson,* the U.S. Supreme Court announced that a subjective test was to be applied, hinging only on the searching officer's personal belief of whether it was immediately apparent to him that the protrusion was contraband. I find that such a test encourages officers to use the "retro spectroscope"[1] to ensure the admissibility of contraband at a subsequent trial by testifying that they immediately believed a protrusion to be contraband. Having made this observation, I recognize that we are constrained to follow the law set forth by our nation's highest court.

---

1. A "retro spectroscope" is an instrument used to produce hindsight.