Derrick JOHNSON, Appellant–Defendant,

v.

STATE of Indiana, Appellee.

No. 49A02–9803–CR–272.

Court of Appeals of Indiana.

May 18, 1999.

Pequita Jay Buis, Buis & Associates, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Rosemary L. Borek, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge

Appellant, Derrick Johnson (Johnson), appeals his conviction for Possession of Cocaine, a Class D Felony.[1]

We reverse.

---

1. I.C. 35–48–4–6 (Burns Code Ed. Repl.1998).

The sole issue presented is whether the trial court erred in denying Johnson's motion to suppress evidence.

On September 19, 1997, at approximately one o'clock in the morning, an officer with the Indianapolis Police Department (IPD) observed an unidentified person fire a gun either into the air or at a residence near the 1300 block of North Temple Street. The suspect, who fled from police, was described as a "[b]lack male, late teens or early twenties, wearing dark clothing, five-ten to six foot tall." Record at 30. Officer John Guilfoy (Guilfoy) and other IPD officers established a search perimeter in the area. After five to ten minutes, Guilfoy observed Johnson appear from between two houses, mount a bicycle in the front yard of a residence and travel toward him. Johnson wore a dark sweatshirt and dark jeans; the sweatshirt did not cover the pockets of his jeans.

Officer Guilfoy stopped Johnson. He handcuffed Johnson's hands behind the defendant's back. Guilfoy next performed a patdown search of Johnson's person. In the small front "watch pocket" of the defendant's jeans, Guilfoy felt what he believed to be a possible narcotic substance. Officer Guilfoy slid his finger into the watch pocket and discovered a substance later identified as .1184 grams of crack cocaine.

On September 20, 1997, the State filed an Information charging Johnson with one count of Possession of Cocaine. Johnson waived his right to a jury trial on January 7, 1998. A bench trial was conducted on February 4, 1998. At trial, Johnson moved to suppress evidence of the cocaine. The motion was taken under advisement and subsequently denied on February 11, 1998. The trial court found Johnson guilty. Judgment of conviction was entered as a Class A Misdemeanor.

▇▇▇ Johnson argues that the cocaine was obtained during an illegal search, and, therefore, the trial court committed reversible error in denying his motion to suppress evidence. The admissibility of evidence is within the sound discretion of the trial court. *Sturma v. State* (1997) Ind.App., 683 N.E.2d 606, 608. We will not disturb its decision absent a showing that the trial court abused its discretion. *Moore v. State* (1994) Ind.

App., 637 N.E.2d 816, 818, *trans. denied,* *cert. denied,* (1995) 513 U.S. 1165, 115 S.Ct. 1132, 130 L.Ed.2d 1093. Upon review of a trial court's ruling on a motion to suppress evidence, we will examine the evidence most favorable to the ruling, together with any uncontradicted evidence. *State v. Joe* (1998) Ind.App., 693 N.E.2d 573, 574–75, *trans. denied.* We will neither reweigh the evidence nor judge witness credibility. *Burkett v. State* (1998) Ind.App., 691 N.E.2d 1241, 1244, *trans. denied.*

▇▇▇ "The Fourth Amendment to the United States Constitution and Article 1, section 11 of the Indiana Constitution protect both privacy and possessory interests by prohibiting unreasonable searches and seizures." *Culpepper v. State* (1996) Ind.App., 662 N.E.2d 670, 675 (citing *Coolidge v. New Hampshire* (1971) 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564; *Taylor v. State* (1995) Ind., 659 N.E.2d 535, 537), *trans. denied.* Generally, a judicially issued search warrant is a condition precedent to a lawful search. *Shinault v. State* (1996) Ind.App., 668 N.E.2d 274, 276. However, the warrant requirement is subject to a few well-delineated exceptions. *Moore, supra,* 637 N.E.2d at 818. The burden of proof is on the State to prove that a warrantless search falls within one of the narrow exceptions to the warrant requirement. *Culpepper, supra* at 675.

▇▇▇ One such exception is the *Terry* investigatory stop and frisk. Pursuant to the United States Supreme Court's decision in *Terry v. Ohio* (1968) 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889, a police officer may stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion, supported by articulable facts, that criminal activity "may be afoot," even if the officer lacks probable cause to make an arrest. *Shinault, supra,* 668 N.E.2d at 276–77. We first note that the investigatory stop by Officer Guilfoy was appropriate under the instant circumstances. Guilfoy stated that Johnson "fit the description of a suspect that fled from police" during a "shots-fired run." Record at 28. The location was within the perimeter which the police had established. Johnson was in the

area that police believed the suspect to be. In addition, Johnson acknowledges that, "Officer Guilfoy had the requisite reasonable suspicion to investigate further." Appellant's Brief at 12. Considering the totality of circumstances, Officer Guilfoy was justified in subjecting Johnson to a brief investigatory stop.

■■■ We next examine the constitutionality of Officer Guilfoy's patdown search of Johnson and his subsequent seizure of cocaine discovered in the defendant's watch pocket. "When a police officer makes a *Terry* stop, if he has a reasonable fear of danger, he may conduct a carefully limited search of the outer clothing of the suspect in an attempt to discover weapons which might be used to assault him." *Shinault, supra,* 668 N.E.2d at 277 (citing *Terry, supra,* 392 U.S. at 27, 88 S.Ct. at 1883). The purpose of a *Terry* search is not to discover evidence of a crime but rather to allow an officer to pursue his investigation without fear of violence. *Id.* Thus, a *Terry* search should be confined to its protective purpose. *Id.*

■■■ The seizure of contraband detected during the lawful execution of a *Terry* search is permissible under the "plain feel" doctrine. In *Minnesota v. Dickerson* (1993) 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334, the United States Supreme Court determined that police officers may seize contraband detected by means of the officer's sense of touch during a protective patdown search of the sort permitted by *Terry.* As noted by the Court in *Dickerson, supra,* 508 U.S. at 375–76, 113 S.Ct. at 2137:

> "If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context."

In reviewing the admissibility of contraband seized without a warrant under the "plain feel" doctrine, two issues are dispositive: (1) whether the contraband was detected during an initial patdown for weapons rather than

during a further search; and (2) whether the identity of the contraband was immediately apparent to the officer. *Burkett, supra,* 691 N.E.2d at 1244–45 (citing *D.D. v. State* (1996) Ind.App., 668 N.E.2d 1250, 1252).

■■■ It was reasonable for Officer Guilfoy to conduct the protective patdown of Johnson's outer garments, because Johnson matched the description of a fleeing suspect reported to have fired shots just minutes before the defendant was spotted and detained by the officer. Officer Guilfoy was entitled to ensure his safety while investigating potentially dangerous criminal activity. The officer testified that his practice was to perform a "systematic patdown" of every suspect. Record at 33. He would conduct his patdown from top to bottom, starting with a suspect's hat and continuing around the collar and down the sleeves toward the suspect's waistband, pants and shoes. Guilfoy was only mid-way through this standard patdown when he felt Johnson's pocket. Moreover, Johnson was suspected of carrying a firearm. Given the varying sizes and shapes of weapons and the inability of Guilfoy to know Johnson's skill in using weapons of any type, it would be unreasonable to conclude, as Johnson urges us to do, that Officer Guilfoy was not permitted to patdown the front watch pocket of the defendant's jeans, because Johnson's hands were handcuffed behind his back. Patting down the watch pocket did not constitute the continuation of a "curiosity search." Thus, we are satisfied that Guilfoy detected the cocaine during an initial pat down for weapons.

■■■ Johnson argues that his conviction should be reversed because the identity of the cocaine was not immediately apparent to Officer Guilfoy at the time of the search. We agree. Officer Guilfoy was the State's sole prosecution witness. On direct examination, he testified in relevant part as follows:

"Q. When you stopped [Johnson], what did you do?

A. I—because of the nature of the incident, because it's a high-crime area, I patted down Mr. Johnson for weapons.

.

Q. Did you—what happened when you patted him down?

A. As I patted down Mr. Johnson for weapons, I plainly felt what I thought was possibly narcotics in his small pocket of the right side of the jeans in the front.

\* \* \*

Q. Are you familiar with what crack cocaine looks like?

A. Yes, I am.

Q. Are you familiar with what if feels like?

A. Yes, I am.

Q. Now, would you describe this cocaine you found as jagged?

A. It's a very hard substance. It feels almost like a pebble or a rock. It's very commonly carried in plastic, which you can also feel in general situations.

Q. Based on your experience, did you believe what you felt could have been cocaine?

A. Yes." Record at 29, 39–40.

Further, Guilfoy responded to preliminary questions by defense counsel in the following manner:

"Q. And you said when you patted down Mr. Johnson—correct me if I'm wrong, but I believe you said that you plainly felt what you believed to be a possible narcotic?

A. Yes.

\* \* \*

Q. Did you ever slide your finger down inside of the pocket?

A. Only after I felt what I believed to be narcotics.

Q. What size are we talking here?

\* \* \*

A. Half the size of a dime.

Q. Was it rounded?

A. It was very roughly circular, yes.

Q. Was it about the size of maybe a TicTac?

A. That would be comparable, yes.

Q. When you say possible narcotic, did you believe that it could have been something else?

A. It could have been something else, but it's a high-crime area. That's a common place for people to hide narcotics, and through my experience as a police officer and in narcotics investigations before, I knew that was a likely place for narcotics to be found.

Q. But you weren't absolutely positive at that time that that's what that was[?]

A. No, I wasn't absolutely, one-hundred percent positive that it was crack cocaine.

Q. But you were certain there was no weapon in that pocket?

A. I was certain there was something in the pocket that felt it could possibly be narcotics.

Q. Then, in your testimony, you knew there was no weapon, but because of the pocket's location and because it was small and a hard shape, that is why you believed it was a narcotic?

A. Yes. Because of the type of run, because of the type of area, I believed that he could have possessed weapons, and after I did the patdown search and felt what could possibly be narcotics in his pocket, I then went ahead and pulled it out." Record at 33–37.

*D.D. v. State* (1996) Ind.App., 668 N.E.2d 1250, is instructive. In *D.D.*, a police officer seized cocaine during a patdown of a juvenile. The officer testified on direct examination that, as he started a patdown of the suspect, he felt "a little thing" in the juvenile's watch pocket. *D.D., supra* at 1253. The officer then reached into the suspect's pocket and grabbed the item in order to identify it. Responding to preliminary questions from defense counsel, the officer stated that the bulge "felt to me like contraband." *Id.* The juvenile's motion to suppress the cocaine evidence was denied. During further direct examination testimony, the officer responded that, before reaching into the juvenile's pocket, he believed the item to be "contraband"

that was "[p]robably cocaine or marijuana" because the item "felt like it" and because of the officer's previous experience. *Id.* We observed that the officer's "testimony [did] not reveal that, based upon his sense of touch, [the officer] immediately recognized the bulge to be a bag of 'rock' cocaine." *Id.* at 1254. Further, we concluded that the officer's statements fell "far short of an immediate determination that the item in D.D.'s pocket was cocaine." *Id.*

Officer Guilfoy's testimony does not support a finding that the identity of the contraband in Johnson's pocket as cocaine was immediately apparent to him at the time of his protective patdown. There is no indication that Guilfoy instantaneously ascertained that the substance in Johnson's watch pocket was either a weapon or contraband in the form of cocaine. Guilfoy indicated that he "believed" the contraband could "possibly" have been a narcotic.[2] He admitted that it "could have been something else" besides a narcotic. Guilfoy's belief was based largely on the location of the contraband and the neighborhood where the search took place, in addition to the contraband's size and texture. The officer's testimony does not reflect that, based upon the contour or mass of the item inside Johnson's watch pocket, the identity of

the cocaine was "immediately apparent" to him. Similar to the officer's statements in *D.D.*, Guilfoy's observations regarding the nature of the contraband in Johnson's watch pocket were general and imprecise and fell "far short" of an "immediate determination" of the contraband's status.[3] Therefore, we conclude that Officer Guilfoy's search exceeded the permissible bounds of a legitimate patdown.

We hold that the trial court abused its discretion in denying Johnson's motion to suppress. The trial court's judgment is reversed and the cause of action remanded with instructions to vacate Johnson's conviction for Possession of Cocaine.

RUCKER, J., and DARDEN, J., concur.

2. Citing *Walker v. State* (1996) Ind.App., 661 N.E.2d 869, 871, the State contends that Officer Guilfoy's testimony was sufficient to show that it was immediately apparent to him that the contraband in Johnson's watch pocket was a narcotic substance because the officer "believed" the item to be a narcotic. We hold otherwise. During a patdown search, the officer in *Walker* felt an object in the suspect's pocket. Based upon his experience, the officer thought the object was a bag of marijuana. We determined that the identity of the marijuana was immediately apparent to the searching officer. In so doing, we attributed much significance to the officer's testimony that he "instantaneously" realized the object was not a weapon but was marijuana. *Id.* Unlike the officer in *Walker*, Guilfoy did not "instantaneously" believe the object to be a narcotic at the time he first felt it. Rather, Guilfoy believed that it "possibly" could have been a narcotic and that it "could have been something else." Further, the officer's belief in *Walker* was based upon how the object actually felt and not, as in the instant case, largely upon the location of the object on the suspect's person and the nature of the neighborhood wherein the suspect was searched. *See also Jackson v. State* (1996) Ind.App., 669 N.E.2d 744, 749 (Applying the

"plain view" doctrine, court determined that officer's testimony that he "didn't believe [white chunky substance in container pulled from suspect's pocket] was any type of prescription drug" was "not enough to demonstrate that the incriminating nature of the substance was 'immediately apparent' to [the officer].").

3. Guilfoy's observations are more akin to those of the officer in *Parker v. State* (1998) Ind.App., 697 N.E.2d 1265. In *Parker, supra* at 1268, the officer testified at trial that he had "merely suspected" the object in the suspect's front pants was a narcotic. We noted that, "[t]he 'plain feel' doctrine requires that the identity of the object be immediately apparent or instantaneously ascertainable. Merely suspecting the nature of an object is insufficient." *Id.* Here, Officer Guilfoy only "believed" that the object in Johnson's watch pocket was "possibly" a narcotic; such an observation is essentially the same as the "merely suspected" standard rejected in *Parker.* Regardless of any distinctions between the exact meanings of the officer's observations in *Parker* and in the instant case, we conclude that, under either approach, Officer Guilfoy failed to immediately determine or instantly ascertain the nature of the item in Johnson's watch pocket.