Tracy L. WRIGHT, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 10A01–0106–CR–221.

Court of Appeals of Indiana.

April 29, 2002.

Jeffrey D. Stonebraker, Chief Public Defender, Jeffersonville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Tracy Wright ("Wright") was arrested and charged with Possession of Cocaine, a Class A felony,[1] and sentenced to an enhanced thirty-five-year sentence with ten years suspended. Wright appeals, raising three issues for our review:

I. Whether the trial court erred in denying Wright's motions to suppress;

II. Whether the trial court improperly refused Wright's jury instruction on lesser-included offenses; and,

---

1. Ind.Code § 35–48–4–6(a) (1998).

III. Whether the trial court properly balanced Wright's aggravating and mitigating circumstances during sentencing.

We affirm.

## Facts and Procedural History

The facts most favorable to the trial court's judgment reveal that on June 20, 1999, at approximately 5:00 a.m., Officers Tony Lehman ("Officer Lehman") and Jamie Craig ("Officer Craig"), while on routine patrol in Ashland Park in Clarksville, Indiana, noticed two cars illegally parked in front of "no parking" signs. The officers approached one of the cars and found a male, later identified by Officer Lehman as Wright, seated in the driver's seat, and a female seated in the front passenger seat. The officers proceeded to ascertain the identity of the individuals inside the vehicle. Officer Lehman requested Wright's identification while Officer Craig went with the female passenger to her vehicle to obtain her identification.

While Officer Lehman was running Wright's identification, he asked Wright if there were "any guns or anything illegal in his vehicle." Tr. p. 7. According to Officer Lehman's testimony, Wright became agitated after this question was asked, and "started feeling his pockets, reaching under the seat, just reaching everywhere," making Officer Lehman very nervous. *Id.*

Officer Lehman described Wright's movements as "fidgety." *Id.* Officer Lehman informed Wright that his actions were making him nervous and that he should stop reaching around inside the car. However, Wright continued to "feel around" inside the vehicle. *Id.* After Officer Lehman again notified Wright that his actions were making him nervous, Officer Lehman instructed Wright to exit the vehicle, but instead of complying, Wright said, "Why you want me out of the car?" and continued to reach around inside the vehicle. *Id.*

Officer Lehman responded by indicating that Wright simply needed "to get out of the car," opened Wright's car door, and escorted Wright from the vehicle. *Id.* at 7–8.

Upon opening the vehicle door, and without giving Wright his *Miranda* warnings, Officer Lehman proceeded to handcuff Wright. Officer Lehman informed Wright that he was not under arrest, but that he was being handcuffed for officer safety, and that Officer Lehman was going to perform a pat down, because Wright's actions had made him very nervous. While conducting the pat down, Officer Lehman felt an object, located in Wright's left front pants pocket, which he recognized, based on its packaging, shape, and feel, to be rock cocaine. Before reaching inside Wright's pants pocket, Officer Lehman stated aloud, "That's rock cocaine right there." Tr. p. 8. Wright immediately stated, "Oh, that's my own use, that's my own stash. You know, that's my own personal stash." *Id.* Officer Lehman then proceeded to remove the object from Wright's pants pocket, which was later identified as several baggies of rock cocaine, totaling 4.18 grams.

Wright was subsequently charged with Possession of Cocaine, as a Class A felony. Prior to trial, Wright moved to suppress the cocaine and his incriminating statement on the grounds that there was no legal justification for Officer Lehman's pat down search and that Wright's statement was given without the benefit of a *Miranda* warning. After evidentiary hearings, the trial court denied Wright's motions. Following a two-day jury trial, Wright was found guilty as charged. Following a sentencing hearing, on April 11, 2001, the trial court sentenced Wright to the Department of Correction for thirty-five years with ten years suspended.

Wright now appeals. Additional facts will be provided as necessary.

### Discussion and Decision

### I. Motions to Suppress

Wright first argues that the trial court erred when it denied his Motions to Suppress. Specifically, Wright argues that because he was never properly Mirandized, the statements he made during Officer Lehman's pat down search should have been excluded. Wright also argues that Officer Lehman's pat down search exceeded the scope of the Fourth Amendment as it did not result from a reasonable belief that Wright was armed and dangerous. Wright therefore argues that the seizure of cocaine was not justified under the "plain feel" doctrine and should have been excluded.

### A. Standard of Review

■■■ The admissibility of evidence is within the sound discretion of the trial court and will not be disturbed absent a showing that the trial court abused its discretion. *Johnson v. State,* 710 N.E.2d 925, 927 (Ind.Ct.App.1999). Our review of a denial of a motion to suppress is similar to our review of other sufficiency matters. *Goodner v. State,* 714 N.E.2d 638, 641 (Ind.1999). We will disturb the trial court's ruling only upon a showing of abuse of discretion. *Walker v. State,* 661 N.E.2d 869, 870 (Ind.Ct.App.1996). When reviewing a trial court's ruling on a motion to suppress, we will examine the evidence most favorable to the ruling, together with any uncontradicted evidence. *State v. Joe,* 693 N.E.2d 573, 574–75 (Ind.Ct.App.1998), *trans. denied.* We will not judge witness credibility, or reweigh the evidence. *Burkett v. State,* 691 N.E.2d 1241, 1244 (Ind.Ct.App.1998), *trans. denied.*

### B. Miranda Warnings

■■■ *Miranda* warnings are based upon the Fifth Amendment of the U.S. Constitution and require that a suspect be informed of the right to the presence and advice of counsel during custodial interrogation by the police. *Loving v. State,* 647 N.E.2d 1123, 1125 (Ind.1995). *Miranda* requires that officers advise a person who has been "taken into custody or otherwise deprived of his freedom of action in any significant way" that he has the right to remain silent and that any statement he makes may be used as evidence against him. *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (as quoted by *Loving,* 647 N.E.2d at 1125). Statements elicited in violation of *Miranda* are generally inadmissible in a criminal trial and subject to a motion to suppress. *Loving,* 647 N.E.2d at 1125. Wright argues that the incriminating statements that he made during Officer Lehman's pat down, specifically that the cocaine seized by Officer Lehman was his "own personal stash," should be excluded because he was not given his *Miranda* warnings. Tr. p. 8.

■■■ However, *Miranda* safeguards only attach when the suspect is subjected to *custodial* interrogation. *Curry v. State,* 643 N.E.2d 963, 976 (Ind.Ct.App.1994), *trans. denied.* Absent custodial interrogation, there is no infringement of the Fifth Amendment rights identified in *Miranda. Id.* To determine whether a person was in custody, we examine all of the circumstances surrounding the interrogation. *Loving,* 647 N.E.2d at 1125 (citing *Stansbury v. California,* 511 U.S. 318, 114 S.Ct. 1526, 1529, 128 L.Ed.2d 293 (1994)). While, no "bright line" test has developed to determine when an investigatory detention moves beyond a mere *Terry* stop [2] and

---

**2.** An officer may conduct an investigatory stop and search for weapons, consistent with

becomes a custodial interrogation, the "ultimate inquiry is simply whether there [has been] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *Id.* (quoting *California v. Beheler,* 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983) (citation omitted)).

 An arrest is defined as "the taking of a person into custody, that he may be held to answer for a crime," Ind. Code § 35-33-1-5 (1998). "An arrest occurs when 'police officers interrupt the freedom of the accused and restrict his liberty of movement.'" *Taylor v. State,* 464 N.E.2d 1333, 1335 (Ind.Ct.App.1984) (quoting *Armstrong v. State,* 429 N.E.2d 647, 651 (Ind.1982) (citation omitted)). Whether a person is in custody at a given time depends not upon the subjective views of either the interrogating officer or the subject being questioned, but upon the objective circumstances. *Loving,* 647 N.E.2d at 1125 (citing *Stansbury,* 114 S. Ct at 1529). An officer's knowledge and beliefs are only relevant to the question of custody if adequately conveyed, through words or actions, to the individual being questioned. *Id.* (citing *Stansbury,* 114 S.Ct. at 1530). The test is how a reasonable person in the suspect's circumstances would understand the situation. *Id.* (citing *Berkemer v. McCarty,* 468 U.S. 420, 442, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984)).

 Here, Officer Lehman observed Wright's vehicle illegally parked in Ashland Park at approximately 5:00 a.m. while routinely patrolling the area, and approached Wright's vehicle after observing the vehicle in front of a "no parking" sign. After obtaining Wright's identification, and inquiring as to whether Wright had any

weapons or anything illegal inside the vehicle, Wright became very nervous and began feeling his pockets, reaching under the seat and "feeling around" inside the vehicle. Tr. p. 7. After Officer Lehman informed Wright that his actions were making him apprehensive and ordered Wright to stop, Wright continued to act "fidgety." *Id.* Officer Lehman then ordered Wright to exit the vehicle, but instead of complying with the Officer's order, Wright questioned Officer Lehman and continued to feel around inside the vehicle. Officer Lehman then opened the car door and demanded that Wright exit the vehicle. Upon removing Wright from the vehicle, Officer Lehman placed Wright in handcuffs and proceeded to conduct a pat down search for Officer Lehman's own personal safety.

Officer Lehman specifically informed Wright that he was not placing him under arrest prior to placing him in the handcuffs, and that he was only doing so for officer safety. However, we have previously held that the use of handcuffs would cause the reasonable person to feel that one was not free to leave, and that one's freedom of movement was restrained to the degree associated with a formal arrest. See *Loving,* 647 N.E.2d at 1125-26. Thus, we find that Wright was in custody when handcuffed for officer safety at the time that Officer Lehman questioned him.

 We must now determine whether Officer Lehman's exclamation amounted to police interrogation. For purposes of *Miranda,* interrogation includes both express questioning and words or actions that, given the officer's knowledge, the officer should know are reason-

---

the Fourth Amendment, when the circumstances warrant a belief that the officer's safety or that of others was in danger. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d

889 (1968) (as cited by *Joe,* 693 N.E.2d at 575.). Wright acknowledges that Officer Lehman was justified in performing an investigatory stop. Br. of Appellant at 11-12.

ably likely to elicit an incriminating response from the suspect. *Id.* at 1126; *Curry,* 643 N.E.2d at 977. However, interrogation must involve a measure of compulsion beyond that inherent in custody itself. *Curry,* 643 N.E.2d at 977. Not every question an officer asks amounts to interrogation for purposes of *Miranda. Wissman v. State,* 540 N.E.2d 1209, 1212 (Ind.1989). Routine administrative questions such as name, address, height, and weight are considered within a routine booking exception and are removed from the requirements for *Miranda. Loving,* 647 N.E.2d at 1126. For purposes of *Miranda,* because police officers cannot be held accountable for the unforeseen results of their words and actions, the definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response. *Curry,* 643 N.E.2d at 977.

 Here, the record is clear that Officer Lehman's remarks and actions were designed to elicit incriminating responses. Beyond ascertaining Wright's identification, and prior to removing Wright from the vehicle and handcuffing him, Officer Lehman asked Wright if there was anything illegal inside the vehicle to which Wright remained unresponsive. Then, after Officer Lehman removed Wright from the vehicle, handcuffed him and initiated his pat down, Officer Lehman specifically declared to Wright, "[T]hat's rock cocaine right there." Tr. p. 8. Wright responded, "Oh, that's my own use, that's my own stash. You know, that's my own personal stash." *Id.* Given the circumstances, Officer Lehman should have known that his question could lead to a response that was reasonably likely to be useful to the prosecution at trial, and therefore required *Miranda* warnings. Under these facts and

circumstances, we find that Wright was the subject of custodial interrogation during Officer Lehman's search. We therefore conclude that Wright's statement was obtained in violation of *Miranda.*

 However, statements obtained in violation of *Miranda* and erroneously admitted are subject to a harmless error analysis. *Morales v. State,* 749 N.E.2d 1260, 1267 (Ind.Ct.App.2001). To constitute harmless error, the conviction must be:

> supported by substantial independent evidence of guilt which satisfies the reviewing court that there is no substantial likelihood the challenged evidence contributed to the conviction. . . . The court must find that the error did not contribute to the verdict, that is, that the error was unimportant in relation to everything else the jury considered on the issue in question.

*Id.* (internal citations omitted). Here, although Officer Lehman failed to issue Wright his *Miranda* warnings, after which Wright replied to Lehman's exclamation about cocaine, Wright's conviction is supported by independent evidence.

 At trial, Wright failed to object, on Fourth Amendment grounds,[3] to the admissibility of the cocaine as a result of Officer Lehman's pat down search. Absent a contemporaneous objection that is sufficient to alert the trial court of the legal issues involved, any such argument is waived for our review. *Moore v. State,* 669 N.E.2d 733, 742 (Ind.1996) (holding that a defendant waives his suppression claim if he fails to object to the introduction of evidence, makes only a general objection or objects only on other grounds); *Benberry v. State,* 742 N.E.2d 532, 534 (Ind.Ct.App.2001). Waiver not-

---

**3.** Wright did object to the admission of the cocaine evidence on other grounds.

withstanding, Wright's statements were merely cumulative evidence, and the trial court's admission of them was harmless error.

### C. *Terry v. Ohio and Minnesota v. Dickerson*

We note that Wright acknowledges that Officer Lehman was justified in his initial brief detention of Wright, "as it was in the nature of an investigatory stop based on the fact [that] Wright's car was parked in front of a no parking sign in a city park at approximately 5:00 a.m.," and that the Fourth Amendment "does not prohibit the police from routinely inquiring about the presence of weapons during a traffic violation stop." Br. of Appellant at 11–12. While Wright does not question Officer Lehman's inquiry regarding weapons, he does argue that Officer Lehman's warrantless search for weapons exceeded the scope of the Fourth Amendment.

■■■ However, according to *Terry v. Ohio*, the Fourth Amendment to the U.S. Constitution permits a police officer to expand his routine weapons inquiry and conduct a warrantless search for weapons for the officer's own safety. *Terry v. Ohio*, 392 U.S. 1, 26, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (as cited in *Burkett*, 691 N.E.2d at 1244). The purpose of this search is to allow the officer to pursue his investigation without fear for his safety or the safety of others. *Joe*, 693 N.E.2d at 575. The officer need not be absolutely certain that the individual is armed, but only that a reasonably prudent person in the same circumstances would be warranted in the belief that his safety or that of another was in danger. *Id.* In determining whether the officer acted reasonably under the circumstances, due weight must be given, not to the officer's inchoate and unparticularized suspicions, but to the specific reasonable inferences that the officer is entitled to

draw from the facts in light of his experience. *Id.*

■■■ The record before us on appeal reveals that Officer Lehman observed Wright's vehicle illegally parked in Ashland Park at approximately 5:00 a.m. while routinely patrolling the area, and approached Wright's vehicle because it was illegally parked in front of a no parking sign. After obtaining identification from Wright, and inquiring as to whether Wright had any weapons or anything illegal inside the vehicle, which Wright acknowledges was an appropriate inquiry, Wright became very nervous and began feeling his pockets, reaching under the seat, and "feeling around" inside the vehicle. Tr. p. 7. Even after Officer Lehman informed Wright that his actions were making him apprehensive and ordered Wright to stop, Wright continued to act "fidgety." *Id.* Officer Lehman then ordered Wright to exit the vehicle, but instead of complying with the Officer's order, Wright questioned Officer Lehman and continued to feel around inside the vehicle. Officer Lehman then opened the car door and removed Wright from the vehicle, handcuffed him, and performed a pat down search for Officer Lehman's own personal safety. It is not unreasonable for Officer Lehman to have assumed that while Wright was "feeling around" inside the vehicle he was searching for weapons. Under these circumstances we cannot say that Officer Lehman's pat down search was unreasonable.

Wright argues that when Officer Lehman handcuffed Wright, he placed him under arrest, requiring Officer Lehman to have probable cause to conduct a search. *Taylor v. State*, 464 N.E.2d 1333, 1335 (Ind.Ct.App.1984). Although we have determined that Wright was in custody at the time of Officer Lehman's handcuffed

pat down of Wright, we do not find that probable cause was required.

A previous panel of this court has held that when reviewing an officer's *Terry* search "due weight must be given, ... to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Stone v. State*, 671 N.E.2d 499, 501 (Ind.Ct.App.1996) (citing *Terry*, 392 U.S. at 27, 88 S.Ct. 1868). Relying on *Terry*, the panel held that there are three important considerations to be made:

the intrusion is limited in scope to effect its purpose; the purpose of the stop and frisk is to discover hidden instruments that may be used to assault the officer, or others, in the least intrusive means possible; and the reasonableness of the officer's fear of assault is determined by the surrounding circumstances and the officer's experiences.

*Id.* at 501–02.

Moreover, although we have not had an opportunity to do so, the Seventh Circuit, along with other states that have addressed this exact issue, have determined, that after considering all of the surrounding circumstances the mere use of handcuffs does not convert a *Terry* stop into a full arrest so as to require probable cause. *U.S. v. Tilmon*, 19 F.3d 1221, 1224–25 (7th Cir.1994). *See also People v. Archuleta*, 980 P.2d 509 (Colo.1999); *Womack v. U.S.*, 673 A.2d 603 (D.C.1996); *Curtis v. State*, 748 So.2d 370 (Fla.Dist.Ct.App.2000); *State v. Pannell*, 127 Idaho 420, 901 P.2d 1321 (1995); *Trott v. State*, 138 Md.App. 89, 770 A.2d 1045 (2001); *State v. Shultz*, 23 Ohio App.3d 130, 23 OBR 242, 491 N.E.2d 735 (1985). Given the fact that Wright began "feeling his pockets" immediately after being asked if there were "any guns or anything illegal in the vehicle," it was not unreasonable for Officer Lehman to handcuff Wright while conduct-ing his pat down search for his own personal safety.

Also, Wright argues that the cocaine seized during Officer Lehman's pat down search exceeded the scope of the Fourth Amendment. In *Minnesota v. Dickerson*, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), the United States Supreme Court determined that police officers may seize contraband detected through the officer's sense of touch during the lawful execution of a *Terry* protective pat down search. *Id.* at 373, 113 S.Ct. 2130 (as cited by *Walker v. State*, 661 N.E.2d 869, 870 (Ind.Ct.App.1996)). Termed the "plain-feel" doctrine, the Court in *Dickerson* stated:

If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity *immediately* apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context.

*Id.* at 375–76, 113 S.Ct. 2130 (as cited by *Walker*, 661 N.E.2d at 871) (emphasis added).

■ In determining admissibility of contraband seized under this "plain feel" doctrine, we have previously determined that two issues are dispositive: first, whether the contraband was detected during an initial search for weapons rather than during a further search, and second, whether the identity of the item was immediately apparent to the officer. *Burkett*, 691 N.E.2d at 1245. Here, Officer Lehman testified that while conducting his *initial* search for weapons, immediately after escorting Wright from the vehicle, he felt an object, located in Wright's left front pants pocket, which he recognized, based

on its packaging, shape, and feel to be rock cocaine. Tr. p. 8. Thus, the seizure of cocaine, an item whose identity was *immediately* apparent to Officer Lehman, based on its shape and feel, occasioned no further invasion of privacy beyond that already authorized by his search for weapons. Therefore, his warrantless seizure of the cocaine was justified under the plain feel doctrine contained in *Dickerson.*

Nevertheless, Wright argues that the evidence is conflicting, and he

> is at a loss to understand how the trial court could reconcile the major differences in the two officers' testimony. The State made no effort to reconcile the contradictions in the officers' testimony and the trial court seemed satisfied to simply ignore Craig's testimony when preparing its entry denying Wright's motion to suppress.

Br. of Appellant at 18–19.[4] Wright's argument simply invites us to weigh witness credibility and, as previously stated, we will not reweigh the evidence, or judge the credibility of the witnesses. *Burkett,* 691 N.E.2d at 1244; *see also Graves v. State,* 496 N.E.2d 383, 389 (Ind.1986) (reviewing court accepts trial court's determination of witness credibility when reviewing a denial of a motion to suppress). Officer Lehman's seizure of the cocaine was not unreasonable under the plain feel doctrine, and the trial court did not abuse its discretion when it denied Wright's motion to suppress the cocaine evidence.

## II. Jury Instruction

Next, Wright argues that the trial court erred in failing to give his lesser included instruction. Specifically Wright argues that the trial court deprived him of the opportunity of submitting lesser included alternatives to the jury, and thus the jury was deprived of the opportunity of finding him guilty of a lesser offense. The decision to give or deny a tendered jury instruction is largely left to the sound discretion of the trial court. *Hagerman Constr., Inc. v. Copeland,* 697 N.E.2d 948, 959 (Ind.Ct.App.1998), *trans. denied.* We review the trial court's decision only for abuse of that discretion. *Id.* An instruction given to the jury must be a correct statement of the law, be applicable to the evidence adduced at trial, and be relevant to the issues the jury must decide in reaching its verdict. *Kelley v. Watson,* 677 N.E.2d 1053, 1056 (Ind.Ct.App.1997).

On review, we apply a three-step analysis to determine whether an instruction on a lesser included offense should be given. First, we must determine whether the lesser offense is inherently or factually included in the greater offense by looking at the statutes and the charging document. *Wright v. State,* 658 N.E.2d 563, 567 (Ind.1995); *Aschliman v. State,* 589 N.E.2d 1160, 1161 (Ind.1992). "An offense is an inherently lesser-included one if all the statutory elements of the lesser offense are part of the statutory definition of the greater offense." *Aschliman,* 589 N.E.2d at 1161 (citing *Chanley v. State,* 583 N.E.2d 126, 130 (Ind.1991)). If

4. Wright argues that the following testimony is contradictory,

> As he (Lehman) reached the left hand pocket, felt around, moved on with the search. Came back to the left hand pocket, asked Mr. Wright what was in his left hand pocket. With Officer Lehman I had been in a lot of different situations in which he, he's good at, he's good at what he does. He

> asked Mr. Wright what was in his front pocket and Mr. Wright stated it was his own personal stash. Mr. Lehman then stated "is that rock cocaine?" Mr. Wright then stated it was his own personal stash again. After that officer Lehman then went into the left front pocket and pulled out the rock cocaine, what looked to be rock cocaine.

Br. of Appellant at 18 (citing Tr. pp. 25–26).

not inherently included in the crime charged under step one, then we must compare the statute defining the alleged lesser included offense with the charging instrument in the case. *Wright,* 658 N.E.2d at 567. "If the charging instrument alleges that the means used to commit the crime charged include[d] all of the elements of the alleged lesser included offense, then the alleged lesser included offense is factually included in the crime charged...." *Id.* Finally, if the alleged lesser included offense is either inherently or factually included in the crime charged, we must look at the evidence presented to determine if there is a serious evidentiary dispute about the element or elements distinguishing the greater from the lesser offense and if, in view of this dispute, a jury could conclude that the lesser offense was committed but not the greater. *Id.; Aschilman,* 589 N.E.2d at 1162. The resolution of this question hinges on whether a serious evidentiary dispute exists with respect to the element which distinguishes the greater from the lesser offense. *Wright,* 658 N.E.2d at 567. If an offense is inherently included in the crime charged, we may proceed directly from step one to step three. *Id.* at 566–67.

Wright concedes with the State's argument that his tendered lesser included offenses are inherently included, and that we may proceed directly to step three in the *Wright* analysis. Br. of Appellant at 30. Under the third step of the analysis in this case, we look to the actual evidence presented to determine if there was evidence of the lesser included offenses but not the greater.

■ Based on Indiana Code section 35–48–4–6, Wright tendered the following instruction:

The defendant is charged with Possession of a Narcotic Drug, a Class A Felony. Lesser Included Offenses are: Pos-

session of a Narcotic Drug, a Class D Felony, Possession of a Narcotic Drug, a Class C Felony and Possession of a Narcotic Drug, a Class B Felony.

(a) A person who, without a valid prescription or order of a practitioner acting in the course of the practitioner's professional practice, knowingly or intentionally possesses cocaine (pure or adulterated) or a narcotic drug (pure or adulterated) classified in schedule I or II commits possession of cocaine or a narcotic drug, a Class D felony, except as provided in subsection (b).

(b) the offense is:

(1) Class C felony, if:

(A) the amount of the drug involved (pure or adulterated) weighs three grams or more; or

(B) the person was also in possession of a firearm (as defined in I.C. 35–47–1–5);

(2) a Class B felony if the person in possession of the cocaine or narcotic drug possesses less than three grams of pure or adulterated cocaine or narcotic drug;

(A) on a school bus; or

(B) in, on, or within one thousand feet of:

(i) school property;

(ii) a public park; or

(iii) a family housing complex; and

(3) a Class A felony if the person possess the cocaine or narcotic drug in an amount (pure or adulterated) weighing at least three grams;

(A) on a school bus; or

(B) in, on, or within one thousand feet of:

(i) school property;

(ii) a public park; or

(iii) a family housing complex.

Appellant's App. p. 107 (citing Ind.Code § 35–48–4–6 (1998)). In refusing this instruction the trial court determined that it did not

> find that there was any serious evidentiary dispute among the evidence points that were presented to the Jury. And while they may have some doubts or questions the Court did not see a serious evidentiary dispute that was presented to the Court so that was basis for the Court's overruling the request for the lesser included offense.

Tr. p. 370. Our review of the evidence[5] indicates that Officer Lehman testified that he found nine cocaine rocks in Wright's pants pocket, while Wright was located in a public park. Tr. pp. 249–50. The State identified the cocaine Officer Lehman found as State's Exhibit 1. Indiana Forensic scientist, William Bowles ("Bowles"), testified that he tested the substance identified in State's Exhibit 1, and found it to be cocaine with a net weight of 4.18 grams. There was sufficient evidence for the jury to conclude that Wright was guilty of possession of cocaine as a Class A felony.

■ Wright asserts that the Jury's questions to Bowles regarding evidence tampering suggest that evidence was tampered with in this particular case, and mandated that his lesser included instruction should have been given. The jury asked the following questions of Bowles:

Q: Has there ever been a case where you requested evidence to be examined and the wrong evidence was brought out of the security vault?

Q: In 22 years of service with the Indiana State Police are you aware of any time evidence has been tampered

with when it was in the possession of the secure storage facility at the Indiana State Police?

Q: Is there a procedure for examining evidence when you request it to make sure that you are examining the evidence requested?

Tr. pp. 167–69. In response to these questions, Bowles responded, that in October of 1998,

> there were some allegations that a former employee of ours may have tampered with some of the evidence that he had in his possession. Whether or not that's actually true or not I don't know. But it wasn't any evidence that had been assigned to me or it wasn't in the vault.

Tr. pp. 171–72. Thus, contrary to Wright's suggestion, there was absolutely no evidence of tampering concerning the evidence admitted in this particular case. The jury merely asked three questions which were answered in the negative. Where there is no serious evidentiary dispute related to the elements, the trial court is simply not required to instruct the jury on lesser included offenses. *Norwood v. State*, 670 N.E.2d 32, 36–37 (Ind.Ct.App. 1996). For all of these reasons, we find that the trial court properly refused Wright's lesser included jury instruction.

### III. Sentencing

■ Finally, Wright argues that the trial court failed to adequately balance his aggravating and mitigating circumstances during sentencing. Sentencing decisions lie within the discretion of the trial court. *Jones v. State*, 698 N.E.2d 289, 291 (Ind.1998). We will not revise a sentence authorized by statute unless it is manifest-

---

**5.** We acknowledge that because the trial court made a factual finding regarding the existence of a serious evidentiary dispute our standard of review is an abuse of discretion, and thus we need not review the evidence. However, to ensure that no error occurred we choose to make an independent review of the evidence.

ly unreasonable in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). "The issue is not whether in our judgment the sentence is unreasonable, but whether it is clearly, plainly, and obviously so." *Echols v. State,* 722 N.E.2d 805, 809 (Ind.2000) (quoting *Bunch v. State,* 697 N.E.2d 1255, 1258 (Ind.1998) (citation omitted)).

We recognize that Indiana Code section 35–38–1–7.1 vests the trial court with wide discretion to determine whether the presumptive sentence should be increased or decreased because of aggravating or mitigating circumstances. Ind. Code § 35–38–1–7.1 (Supp.2000); *Bonds v. State,* 729 N.E.2d 1002, 1004 (Ind.2000). When exercising its discretion, the trial court must conduct a hearing and include within the record a statement explaining the rationale behind its sentence. Ind. Code § 35–38–1–3 (1998); *Mitchem v. State,* 685 N.E.2d 671, 678 (Ind.1997). This statement should include an identification of the significant aggravating and mitigating factors, specific facts and reasons leading the court to find the existence of each factor, and an articulation demonstrating that the mitigating and aggravating factors have been evaluated and balanced in determining the sentence. *Mitchem,* 685 N.E.2d at 678; *Dixon v. State,* 685 N.E.2d 715, 717 (Ind.Ct.App. 1997).

On April 11, 2000, the trial court conducted a sentencing hearing and heard arguments regarding Wright's aggravating and mitigating circumstances. The trial court found that Wright's prior criminal history, which included several misdemeanor convictions, was an aggravating factor. The trial court found that Wright's two young children, a work history, family support, and successful completion of a prior probation term were mitigating factors. After balancing Wright's aggravating and mitigating circumstances, the trial court sentenced Wright to the Department of Correction for an enhanced sentence of thirty-five years, with ten years suspended.

Wright argues that the trial court erroneously considered some factors as aggravating and did not provide sufficient articulation of the requisite balancing process when imposing the sentence. Specifically, Wright argues that

a record of arrests cannot be considered as an aggravator under I.C. 35–38–1–7.1(b)(2) because it does not reveal to the sentencing court that the defendant has engaged in the kind of behavior which the legislature identified as an aggravator in that subsection. A record of arrests without more, does not establish the historical fact that the defendant committed a criminal offense on a previous occasion such that it may be properly considered as evidence that the defendant has a history of criminal activity.

Br. of Appellant at 36.

While Wright may be correct, our statute does allow the trial judge to consider a defendant's prior "history of criminal or delinquent activity" as a proper aggravating circumstance. Ind.Code § 35–38–1–7.1(b)(2) (Supp.2000); *Spiller v. State,* 740 N.E.2d 1270, 1274 (Ind.Ct.App.2001), *trans. denied.* The language does not limit the trial court's consideration to prior *felony* convictions, but also allows the court to consider misdemeanors. Here, the evidence reveals that Wright had a significant history of misdemeanor *convictions,* including disorderly conduct, contempt, resisting arrest, stalking, harassment, and carrying a concealed weapon. Appellant's App. pp. 143–45. Contrary to Wright's suggestion, the trial judge considered more than a mere record of arrests, and these convictions were properly con-

sidered by the trial court as an aggravating factor.

Also, prior to imposing its sentence the trial court stated,

> having balanced the mitigating and aggravating factors in this case [sic] now sentences the Defendant, Tracy L. Wright, to the custody of the Indiana Department of Corrections [sic] for a fixed term of thirty-five (35) years with ten (10) years suspended subject to strict terms of probation.

Tr. p. 452. Although, the court did not specifically indicate that the aggravating factor outweighed the mitigating factors, as case law would counsel we can infer from this language that the court did in fact engage in the requisite balancing process before sentencing Wright. We therefore find no error. *See Manns v. State*, 637 N.E.2d 842, 846–47 (Ind.Ct.App.1994) (finding that while the trial court failed to articulate the required balancing process, the sentencing statement revealed that the trial court did, indeed, thoughtfully evaluate the circumstances, and remand was not necessary). *See also Wells v. State*, 568 N.E.2d 558, 563 (Ind.Ct.App.1991) (holding that no error had occurred where, although the court had failed to specifically articulate whether the aggravating circumstances outweighed the mitigating circumstances, it was clear from the record that the court had thoughtfully evaluated the circumstances, and the supported aggravating factors).

## Conclusion

For all these reasons, we conclude that the trial court properly denied Wright's motions to suppress, and properly refused to instruct the jury regarding Wright's lesser included offenses. We further conclude that the trial court properly considered Wright's prior misdemeanor convictions as an aggravating factor and properly balanced it against Wright's mitigating factors. The conviction and the sentence of the trial court is therefore affirmed.

Affirmed.

RILEY, J., concurs.

BROOK, C. J., concurs as to Issues II and III and concurs in result with separate opinion as to Issue I.

BROOK, Chief Judge, concurring in result as to issue I.

I respectfully disagree with the majority's conclusion that Officer Lehman's pat-down search of Wright was reasonable under the Fourth Amendment. I write separately to explain my disagreement.

Wright properly concedes that Officer Lehman was justified in performing an investigative *stop*, but he does not concede that Officer Lehman was justified in performing an investigative *search* for weapons. The *Terry* court enunciated the following test for determining the reasonableness of an investigative search:

> Our evaluation of the proper balance that has to be struck in this type of case leads us to conclude that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, *where he has reason to believe that he is dealing with an armed and dangerous individual*, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate

and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience. *Terry*, 392 U.S. at 27, 88 S.Ct. 1868 (emphasis added); *see also Tumblin v. State*, 736 N.E.2d 317, 322 (Ind.Ct.App.2000) ("A generalized suspicion that an individual represents a threat to an officer's safety does not authorize a patdown search. There must exist articulable facts to support an officer's reasonable belief that the particular individual is armed and dangerous.") (citation omitted).

At most, Officer Lehman claimed that Wright's movements made him "very nervous." Tr. at 12. *Cf. State v. Joe*, 693 N.E.2d 573, 575 (Ind.Ct.App.1998) (upholding *Terry* search conducted in "neighborhood well known for drug trafficking and shootings" and where defendant "began fidgeting with his hand between the console and the driver's seat of the car" and "put his hands where they could be seen. .... only after the police officer had made repeated demands and had drawn his gun. The police officer testified that [defendant's] actions had frightened him."). Officer Lehman never testified that he believed that Wright was armed or that he believed that his safety was in danger. *Cf. Trigg v. State*, 725 N.E.2d 446, 449 (Ind. Ct.App.2000) (upholding *Terry* search where officer testified that defendant's "actions and behavior as he approached the car caused him to believe [defendant] was reaching for a weapon"); *Tumblin*, 736 N.E.2d at 322 ("[A]n officer's knowledge that an individual carries a weapon or has previously been arrested on a weapons charge is sufficient to justify a patdown search. The behavior of an individual during a traffic stop, e.g., acting in an aggressive or hostile manner, may cause an officer to reasonably fear that his safety is compromised.") (citation omitted).

In fact, Officer Lehman testified that he pulled Wright from the vehicle within "seconds" of asking him whether he had any drugs or weapons. Tr. at 12. An investigative search for weapons "must, like any other search, be strictly circumscribed by the exigencies which justify its initiation" and therefore "must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby[.]" *Terry*, 392 U.S. at 25–26, 88 S.Ct. 1868 (citation omitted). Once Officer Lehman removed him from the vehicle, Wright could not reach for any weapon that might have been concealed there, and once Officer Lehman handcuffed him, Wright could not reach for any weapon that might have been concealed on his person. Thus, not only was there no indication that Wright was armed and dangerous to begin with, but there was also no exigency to justify Officer Lehman's investigative search for weapons once Wright was out of the vehicle and in handcuffs. In my view, Officer Lehman's search of Wright was patently unreasonable, and the trial court abused its discretion in denying Wright's motion to suppress the cocaine obtained as a result of the search.

Nevertheless, since Wright failed to object at trial to the admission of the cocaine, his conviction for cocaine possession must stand. *See Wright v. State*, 593 N.E.2d 1192, 1194 (Ind.1992) ("When the trial court denies a motion to suppress evidence ...., the moving party must renew his objection to admission of the evidence at trial. If the moving party does not object to the evidence at trial, then any error is waived.") (citation omitted), *cert. denied.* Therefore, I concur in the majority's result as to issue I, and I fully concur in the majority's opinion as to issues II and III.