Tiffany EDMONDS, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 46A05–0504–CR–214.

Court of Appeals of Indiana.

Jan. 18, 2006.

Transfer Denied March 21, 2006.

Benjamen W. Murphy, Andrew M. Yoder, Murphy Yoder Law Firm, P.C., Merrillville, for Appellant.

Steve Carter, Attorney General of Indiana, Matthew D. Fisher, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

KIRSCH, Chief Judge.

Tiffany Edmonds appeals both her con-

victions and sentences for robbery,[1] as a Class B felony and criminal confinement,[2] as a Class B felony. She raises two issues, which we restate as:

I. Whether the trial court abused its discretion when it admitted Edmonds's statement to police into evidence; and

II. Whether the trial court abused its discretion when it ordered Edmonds's sentences to be served consecutively.

We affirm in part and reverse in part.

## FACTS AND PROCEDURAL HISTORY

On the evening of November 29, 2003, Carlos Ruiz went to the Shangri–La Gentlemen's Club, in Gary, Indiana. While in the club, Ruiz was approached by Edmonds, a dancer in the club, and she asked Ruiz if he wanted to buy her a drink. Ruiz agreed and pulled two rolls of money from his pocket, which contained almost $900. Ruiz also paid for a lap dance from Edmonds. Edmonds told Ruiz that she had three children, and she asked him if he could give her $50 for Christmas money for them. Ruiz agreed to give her $50, but she told him not to give it to her at that time and that she would meet him later to get the money. Ruiz gave Edmonds his cell phone number so she could call him to collect the money. Ruiz returned to his motel room at the Red Roof Inn in Michigan City at approximately midnight.

At approximately 6:00 a.m. the next morning, Edmonds called Ruiz and said she wanted to come over and pick up the Christmas money. Edmonds arrived at the motel room at approximately 7:00 or 7:30 a.m. When Edmonds entered Ruiz's room she attempted to leave the door unlocked. Ruiz told her that the door locked automatically and to just let it go because it would lock itself. She then suggested to Ruiz that they get some ice, and they both walked to the ice machine near the motel office. Edmonds again tried to leave the door unlocked when they exited the room. When they returned from the ice machine, Edmonds again attempted to unlock the door, and Ruiz asked her what she was doing.

Before Ruiz could reach the door to close it, an unidentified male burst into the room and held a gun in Ruiz's face and told Ruiz not to look at him. As the man pushed Ruiz towards the bathroom, he told Edmonds, "Get everything, bitch. Make sure you get everything." *Trial Tr.* at 78. The man then struck Ruiz in the head with the gun and duct-taped Ruiz's mouth closed and his hands behind his back. After the man forced Ruiz into the bathtub, he shouted to Edmonds, "Get it all, bitch. Hurry up, bitch. Did you get it all, bitch? Did you get it all yet? Did you find everything, bitch?" *Trial Tr.* at 80. Edmonds responded, "I'm hurrying. I'm hurrying. I'm getting it." *Trial Tr.* at 80. When the man noticed that Ruiz had freed one of his hands, he struck Ruiz in the head several more times with the gun. Soon thereafter, Ruiz heard the door of the room close. Edmonds and the man took approximately $800 in cash, two cell phones, four sets of keys, a checkbook, a wallet, and a watch from Ruiz's room.

On December 2, 2003, the State charged Edmonds with robbery, as a Class B felony and criminal confinement, as a Class B felony, and a warrant was issued for her arrest. On February 26, 2004, Michigan City Police Detective Royce Williams and Detective–Sergeant Larry Litchfield went to the LaPorte County jail to speak with Edmonds after she had been arrested. The detectives told her that they were

---

1. *See* IC 35–42–5–1.

2. *See* IC 35–42–3–3(b)(2)(A).

there to speak with her about the pending charges of robbery and criminal confinement against her. They then informed her that they first had to make sure that she understood her rights. Edmonds stated, "that was fine" and agreed to speak with them. Detective Williams read Edmonds a LaPorte County Prosecuting Attorney's Office Constitution Rights Form ("Rights Form") and told her to read along as he read. The Rights Form consisted of an advisement of rights section and a waiver of rights section. *State's Ex.* 2. The advisement of rights section contained five sentences that were to be initialed to indicate that Edmonds had read and understood them. The waiver portion of the Rights Form contained five questions that were to be answered either "yes" or "no."

Edmonds answered "yes" to questions one and two, indicating that she had been read her constitutional rights and that she understood them. *State's Ex.* 2. Question number three stated, "Do you wish to have an attorney at this time?" *State's Ex.* 2. This question should be answered "no" in order to waive the right to an attorney. After question three was read to Edmonds, she initially wrote "yes." In Detective Williams's experience, some people get complacent and just automatically put yes as the answer to question number three when they really do not want an attorney at that time. *Trial Tr.* at 7. Detective–Sergeant Litchfield also had witnessed times in his career when people have mistakenly answered yes to question three on the Rights Form. *Trial Tr.* at 32. Immediately after Edmonds wrote her response, Detective Williams asked her if she wanted an attorney before speaking to police, and she said no, crossed out the word yes, changed her answer to no, and initialed the correction. *Trial Tr.* at 7.

During the interview, Edmonds admitted being in Ruiz's hotel room during the robbery, but denied any previous knowledge of the crimes or any other involvement in them. *State's Ex.* 1, p. 19, 30. Edmonds told the police that the unidentified male who robbed Ruiz was an ex-boyfriend of hers; however the police later determined that this ex-boyfriend was incarcerated at the time of the robbery and could not have been involved. *State's Ex.* 1, p. 12.

Before Edmonds's trial, she filed a motion to suppress her statement to the police, which the trial court denied. *Trial Tr.* at 39. Edmonds was found guilty of Class B felony robbery and Class B felony criminal confinement after a jury trial. At her sentencing hearing, the trial court found Edmonds's criminal history to be an aggravating circumstance and found no mitigating circumstances. The trial court sentenced Edmonds to ten years for each conviction and ordered the sentences to be served consecutively. Edmonds now appeals.

## DISCUSSION AND DECISION

### I. Admissibility of Edmonds's Statement

The admissibility of evidence is within the sound discretion of the trial court and will not be disturbed without a showing of an abuse of that discretion. *Wright v. State*, 766 N.E.2d 1223, 1229 (Ind.Ct.App.2002). Our review of a denial of a motion to suppress is similar to our review of other sufficiency matters. *Id.* (citing *Goodner v. State*, 714 N.E.2d 638, 641 (Ind.1999)). We review the ruling for substantial evidence of probative value to support the trial court. *Alford v. State*, 699 N.E.2d 247, 250 (Ind.1998). We examine the evidence most favorable to the ruling along with any uncontradicted evidence. *Wright*, 766 N.E.2d at 1229. We do not reweigh evidence or judge witness credibility. *Id.*

Edmonds argues that the trial court erred when it denied her motion to suppress and admitted her statement to police because it was obtained in violation of her Fifth Amendment right to counsel. She specifically contends that after her arrest and before she gave her statement, she asserted her right to counsel, but that the police did not stop the interrogation.

 "The right to have counsel present during an interrogation 'is indispensable' to the protection of the Fifth Amendment privilege against self-incrimination." *Jolley v. State,* 684 N.E.2d 491, 492 (Ind. 1997) (citing *Miranda v. Arizona,* 384 U.S. 436, 469, 86 S.Ct. 1602, 1625, 16 L.Ed.2d 694 (1966)). When a suspect invokes his right to counsel during custodial interrogation, the police must stop questioning until counsel is present or the suspect reinitiates communication and waives his right to counsel. *Id.* (citing *Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981)). "Invocation of the *Miranda* right to counsel 'requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.'" *Davis v. United States,* 512 U.S. 452, 459, 114 S.Ct. 2350, 2355, 129 L.Ed.2d 362 (1994) (quoting *McNeil v. Wisconsin,* 501 U.S. 171, 178, 111 S.Ct. 2204, 2209, 115 L.Ed.2d 158 (1991)). If a suspect makes a request for counsel that is ambiguous or equivocal and, if in light of the circumstances, a reasonable officer would not understand the statement to be a request for an attorney, then the police are not required to stop questioning the suspect. *Id.* The Supreme Court in *Davis* noted that "it will be good police practice for the interviewing officers to clarify whether or not he actually wants an attorney" when a suspect makes an ambiguous statement, but it declined to adopt a rule requiring officers to ask clarifying questions. *Id.*

 In the present case, Detective Williams and Detective–Sergeant Litchfield spoke to Edmonds while she was under arrest. After the detectives identified themselves and told her why they were there, she initially agreed to speak with them. Detective Williams read the advisement portion of the Rights Form aloud to Edmonds, while she read along and initialed each statement. He then read the waiver portion of the Rights Form, while she read along and answered the questions. Although Edmonds answered "yes" to question three, which asked whether she wished to have an attorney at that time, both detectives had experience with suspects in the past, who had mistakenly answered "yes," but had intended to answer "no." In the past, suspects had become complacent and automatically answered "yes" to question three when they actually did not wish to have an attorney at that time. Because of Edmonds's actions and demeanor up to that point, the detectives had an objective, good faith question as to whether Edmonds really intended to answer "yes." They therefore made a non-coercive inquiry into whether she wanted an attorney before she spoke to police. She immediately answered "no," changed her answer on the Rights Form to reflect this, and initialed the change.

The present case is distinguishable from *Smith v. Illinois,* 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984), where nothing in the suspect's actions or statements prior to his request for counsel could be pointed to in order to cast doubt on the request. *Id.* at 96, 105 S.Ct. at 493. The request for counsel could only be found to be ambiguous by looking to the suspect's subsequent responses to continued police questioning. *Id.* at 97, 105 S.Ct. at 494. The Supreme Court held that when "nothing about the request for counsel or the cir-

cumstances leading up to the request would render it ambiguous, all questioning must cease." *Id.* at 98, 105 S.Ct. at 494. Here, the circumstances that make Edmonds's answer to question three equivocal all preceded her answer. Because Edmonds's prior actions and statements cast doubt on the legitimacy of her request for an attorney, the detectives were not required to stop questioning Edmonds, and the trial court did not abuse its discretion when it admitted her statement.[3]

## II. Consecutive Sentences

 Sentencing decisions are within the trial court's discretion and will be reversed only upon a showing of an abuse of that discretion. *Westmoreland v. State*, 787 N.E.2d 1005, 1008 (Ind.Ct.App.2003). The trial court's sentencing discretion includes determining whether to increase the sentence, to impose consecutive sentences on multiple convictions, or both. *Parker v. State*, 773 N.E.2d 867; 872 (Ind. Ct.App.2002), *trans. denied.* We may revise a sentence authorized by statute if it is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B); *Westmoreland*, 787 N.E.2d at 1009.

 Edmonds argues that the trial court abused its discretion when it sentenced her to ten years for each of her convictions and ordered the sentences to be served consecutively. She first contends that the trial court improperly characterized her prior criminal history as a significant aggravating factor. In order to impose consecutive sentences, the trial court must find at least one aggravating circumstance. *Ortiz v. State*, 766 N.E.2d 370, 377 (Ind.2002). If a trial court impos-

es consecutive sentences, when not required to do so by statute, this court will examine the record to insure that the trial court adequately explained its reasons for selecting the sentence imposed. *Id.*

 The trial court is required to identify all significant aggravating circumstances. *Westmoreland*, 787 N.E.2d at 1010. "Significance varies based on the gravity, nature and number of prior offenses as they relate to the current offense." *Id.* (citing *Wooley v. State*, 716 N.E.2d 919, 932 (Ind.1999)). The trial court only found one aggravating circumstance, which was Edmonds's criminal history. As a juvenile, Edmonds was charged with disorderly conduct and intimidation and was placed on formal probation and ordered to write a letter of apology. The record is unclear as to whether she was adjudicated on one or both of these charges. Edmonds also had one adult conviction for disorderly conduct. The record does not contain any evidence that her prior disorderly conduct conviction and juvenile charge are related in any way to the present offenses. The only offense that could relate to the present offense is her prior juvenile charge of intimidation. We find based on this evidence that Edmonds's criminal history is not a significant aggravating circumstance, and the trial court abused its discretion in identifying it as one.

 Edmonds also claims that the trial court abused its discretion when it did not find undue hardship on her dependents as a mitigating circumstance. We disagree. The finding of mitigating circumstances is well within the discretion of the

3. Edmonds also contends that her statement was obtained in violation of her Sixth Amendment right to counsel. Because we find that Edmonds's answer of "yes" was not a clear and unequivocal request for an attorney and her Fifth Amendment right was not violated, the same reasoning applies, and we conclude that her statement was not obtained in violation of her Sixth Amendment right.

trial court. *Abel v. State,* 773 N.E.2d 276, 280 (Ind.2002). A sentencing court need not agree with the defendant as to the weight or value to be given to a proffered mitigating factor. *Bostick v. State,* 804 N.E.2d 218, 225 (Ind.Ct.App.2004). "Only when a trial court fails to find a mitigator that the record clearly supports does a reasonable belief arise that the mitigator was improperly overlooked." *Abel,* 773 N.E.2d at 280. The record shows that Edmonds has custody of only two of her three children and that they had been in the care of her mother while Edmonds was in jail pending the outcome of this case. Based on these facts we conclude that undue hardship on Edmonds's children was not a significant mitigating circumstance, and the trial court did not abuse its discretion when it did not find it to be one.

Based on the conclusion that the trial court abused its discretion when it found Edmonds's criminal history to be an aggravating circumstance, we choose to exercise our right under Indiana Appellate Rule 7(B) to revise Edmonds's sentence. We find that the imposition of consecutive sentences was inappropriate, and we revise Edmonds's sentence and order her sentences of ten years for robbery and ten years for criminal confinement to be served concurrently.

Affirmed in part, reversed in part.

MAY, J., and ROBB, J., concur.