## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 10 2016, 8:32 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew D. Anglemeyer
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Johnny Edmonds,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

June 10, 2016

Court of Appeals Case No.
49A02-1510-CR-1669

Appeal from the Marion Superior Court

The Honorable Shatrese M. Flowers, Judge

The Honorable David M. Seiter, Commissioner

Trial Court Cause No.
49G20-1412-F3-56082

**Najam, Judge.**

## Statement of the Case

Johnny Edmonds appeals his convictions for possession of cocaine, as a Level 5 felony, and possession of a narcotic drug, as a Level 5 felony, following a jury trial. He presents two issues for our review, which we consolidate and restate as whether the trial court abused its discretion when it admitted into evidence the contraband officers found during a search incident to his arrest.

We affirm.

## Facts and Procedural History

On December 20, 2014, at approximately 7:00 p.m., Indianapolis Metropolitan Police Department Officer John Walters and other officers responded to a report of an armed robbery in an alley near the 1000 block of Oxford Street. The officers found the victim, John Hancock, at a phone booth at a Citgo gas station approximately one mile from the location of the robbery. Hancock told the officers that the assailant was armed with a "silver and chrome pistol" and stole a personalized wallet,[1] containing $360, as well as a cell phone. Tr. at 39. Hancock described the assailant as "a black male, early thirties, about six f[ee]t tall, medium build" with a "light complexion, gold tooth, [and] wearing a red and black Pelle Pelle coat." *Id*. at 40. The coat had "the words 'Pelle Pelle'

---

[1] The stolen wallet had the name "John Hancock" embossed on it. Tr. at 40.

written on the back," and the assailant was also wearing a grey baseball hat, dark colored pants, and "tan and black shoes[.]" *Id.* at 41.

[4] At approximately 7:30 p.m., Officer Walters and several other officers arrived at the 1000 block of Oxford Street and saw a black male, wearing a Pelle Pelle coat and otherwise matching the description of the robber given by Hancock, standing at a bus stop there. Officer Walters and other officers approached the man, later identified as Edmonds, from all sides, and the officers ordered him to take his hands out of his pockets. Edmonds did not immediately comply with the officers' orders, and Officer Walters and Officer Robinett "made physical contact" with Edmonds, pulling his hands out of his pockets, placing his hands behind his back, and placing him in handcuffs. *Id.* at 94.

[5] As soon as Edmonds was handcuffed, Officer Walters performed a pat-down search of Edmonds' body and clothing for weapons.[2] During that search, Officer Walters felt in a "front left jacket pocket . . . multiple objects . . . contained in plastic baggies" which, Officer Walters knew from his training and experience, "were indicative and sized like suspected narcotics[.]" *Id.* at 96. Officer Walters reached into that pocket and pulled out "a Subway cookie pouch . . . [with] an open top" containing "multiple baggies of a white substance and one baggie that contained some pills[.]" *Id.* at 97. A subsequent search of Edmonds' person revealed another small baggie containing what was

---

[2] After placing Edmonds in handcuffs, Officer Walters read *Miranda* rights to Edmonds.

later found to be heroin, and officers found $401 in cash. Edmonds admitted to Officer Walters that the substances were heroin, cocaine, and Oxycodone pills, and he admitted that he was selling those drugs.

[6] The State charged Edmonds with dealing cocaine, as a Level 3 felony; dealing a narcotic drug, as a Level 4 felony; possession of cocaine, as a Level 5 felony; and possession of a narcotic drug, as a Level 5 felony. Prior to trial, Edmonds moved to suppress the evidence officers found during the pat-down search, but the trial court denied that motion. At trial, a jury acquitted Edmonds of the Level 3 and Level 4 felony charges, but found him guilty of the Level 5 charges. The trial court entered judgment of conviction and sentence accordingly. This appeal ensued.

## Discussion and Decision

[7] Edmonds contends that the trial court abused its discretion when it admitted into evidence at trial, over his objection, the heroin, cocaine, and Oxycodone pills officers recovered from his person during the pat-down search. In particular, Edmonds maintains that those items were seized during a search that "exceeded the scope" of a valid *Terry* stop in violation of his rights under the Fourth Amendment and Article 1, Section 11 of the Indiana Constitution. Appellant's Br. at 10. However, we agree with the State that the encounter between the officers and Edmonds was not a *Terry* stop but a lawful arrest supported by probable cause. Accordingly, the search that revealed the contraband was a lawful search incident to arrest.

[8] The trial court has discretionary power on the admission of evidence, and its decisions are reviewed only for an abuse of that discretion. *Wilson v. State*, 765 N.E.2d 1265, 1270 (Ind. 2002). Here, Edmonds' entire argument on appeal turns on his assumption that his detention was a *Terry* stop and that the ensuing search exceeded the scope of a *Terry* stop. But the undisputed evidence shows that, upon observing Edmonds at the bus stop, officers immediately surrounded him, seized him, and placed him in handcuffs. The officers then searched his person. We have previously held that the use of handcuffs alone can cause a reasonable person to feel that he is not free to leave, and that handcuffing restrains his freedom of movement to a degree associated with a formal arrest. *Wright v. State*, 766 N.E.2d 1223, 1230 (Ind. Ct. App. 2002). Thus, we agree with the State and hold that, on these facts, Edmonds was in custody at the time that Officer Walters searched him.[3] *Id.*

[9] Regardless, when probable cause exists to make an arrest, whether or not a suspect was formally placed under arrest at the time of a search incident to arrest will not invalidate the search. *Bell v. State*, 13 N.E.3d 543, 545 (Ind. Ct. App. 2014), *trans. denied*. Here, the officers had probable cause to arrest Edmonds based on Hancock's allegation that a man fitting Edmonds' description and location was armed and had robbed him. *See, e.g.*, *Sears v. State*, 668 N.E.2d 662, 667 n.9 (Ind. 1996) ("The uncorroborated statements of a

---

[3] Edmonds "does not dispute the officers in this situation were justified in conducting a *Terry* stop and search." Appellant's Br. at 10. Edmonds does not argue that the officers did not have probable cause to arrest him prior to the search.

crime victim may furnish probable cause to obtain an arrest warrant and also provide the probable cause necessary for a warrantless arrest."). And Edmonds does not contend that the search was not a lawful search incident to arrest. *See id.* at 667. Accordingly, the trial court did not abuse its discretion when it admitted into evidence the contraband officers found on Edmonds' person.

[10] Affirmed.

Robb, J., and Crone, J., concur.