**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**VICKIE YASER**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

FILED
Jun 06 2012, 9:30 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

JERMAINE YOUNG,                              )
                                             )
    Appellant-Petitioner,                   )
                                             )
      vs.                                 )    No. 49A02-1109-PC-881
                                             )
STATE OF INDIANA,                            )
                                             )
    Appellee-Respondent.                    )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Michael Jensen, Magistrate
Cause No. 49G23-0703-PC-046314

**June 6, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issues

Jermaine Young was convicted and sentenced for dealing in cocaine as a Class A felony, possession of cocaine as a Class C felony, possession of a controlled substance as a Class D felony, and possession of marijuana as a Class A misdemeanor. Young contends he received ineffective assistance of counsel in three respects: 1) his trial counsel's performance in moving to suppress evidence; 2) his trial counsel's failure to investigate Young's personal background and present mitigating evidence at sentencing; and 3) the failure of both his trial and appellate counsel to raise a double jeopardy claim regarding his dealing in and possession of cocaine charges. Concluding Young has failed to establish that he received ineffective assistance of counsel due to his trial counsel's efforts, or lack thereof, in moving to suppress evidence or presenting mitigating circumstances at sentencing, but that his attorneys' failure to raise the issue of double jeopardy constitutes ineffective assistance of counsel, we remand to the post-conviction court with instructions to vacate Young's conviction for possession of cocaine as a Class C felony. In all other respects, we affirm.

## Facts and Procedural History

In March 2007, Sergeant Paul McDonald of the Indianapolis Metropolitan Police Department was patrolling on the near-eastside of Indianapolis when he observed a vehicle backed into a parking space at a Village Pantry. The vehicle's engine was running and its lights were on, and Sergeant McDonald observed the driver exit the vehicle and enter the Village Pantry, while two other individuals remained inside the car. Knowing that the area is a high-crime area where numerous murders and robberies have

2

taken place, Sergeant McDonald continued to watch the vehicle, and he followed it after it left the Village Pantry.

Sergeant McDonald noted the vehicle's out-of-town license plate. After departing from the Village Pantry, the vehicle quickly made two turns, then changed lanes without signaling and pulled over. As Sergeant McDonald drove past the vehicle, neither the driver nor any passengers exited. Sergeant McDonald turned around, parked near the parked vehicle, and approached the vehicle on foot, all without activating his emergency lights or sirens. Once reaching the vehicle, Sergeant McDonald spoke with the driver, later identified as Young. Sergeant McDonald testified at trial he "noticed immediately that [Young] was under the influence of something because he couldn't talk to me. He was mumbling. His hands were shaking. He was looking straight forward. And so I suspected that he was either intoxicated or under the influence of drugs."[1] [Trial Court] Transcript at 16. Sergeant McDonald testified he told Young that when he ran the vehicle's plate he discovered it was a rental car, and Sergeant McDonald asked Young if he rented the vehicle and if he had his driver's license. Sergeant McDonald testified Young had difficulty answering him, but stated he did not have identification with him.

Sergeant McDonald asked Young to exit the vehicle, and due to Young's strange behavior, Sergeant McDonald testified he decided to handcuff Young until backup could arrive. In the process of doing so, Sergeant McDonald testified he saw a plastic baggie sticking out of Young's shirt pocket, containing what he immediately knew to be crack cocaine. After Sergeant McDonald retrieved the bag, Young "was profusely sweating.

---

[1] The State points to nothing in the record confirming Sergeant McDonald's initial conclusion that Young was intoxicated or under the influence of drugs, nor do we find such confirmation.

3

And his eyes started rolling back in his head. And he fainted." Id. at 20. Young was thereafter arrested.

After Young waived his right to a jury trial, the trial court found Young guilty of dealing in cocaine as a Class A felony, possession of cocaine as a Class C felony, possession of a controlled substance as a Class D felony, and possession of marijuana as a Class A misdemeanor. Young was sentenced to forty years for dealing in cocaine, four years for possession of cocaine, 545 days for possession of a controlled substance, and one year for possession of marijuana, and the trial court ordered his sentence to be concurrent.

Young appealed to this court, raising the sole issue of whether the trial court "erred in finding that he was the same person as the Jermaine Young who had an extensive criminal history in Michigan" and enhancing his conviction for dealing in cocaine based on such criminal history. Young v. State, 894 N.E.2d 602, *1 (Ind. Ct. App. 2008) (table). We affirmed the enhancement of Young's conviction, concluding "there was abundant evidence from which the trial court concluded that the defendant was the same Jermaine Young as the Jermaine Young reported by the Michigan authorities and [the National Crime Information Center]." Id. at *2.

Young then filed a petition for post-conviction relief, contending, among other things, he received ineffective assistance of trial counsel due to his trial attorney's deficiency in handling his motion to suppress evidence and failure to assert mitigating circumstances during sentencing. The post-conviction court denied Young's petition. Young now appeals.

Discussion and Decision

4

## I. Standard of Review

"When appealing the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. To prevail from the denial of post-conviction relief, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court." Overstreet v. State, 877 N.E.2d 144, 151 (Ind. 2007) (citations omitted), cert. denied, 555 U.S. 972 (2008). We "examine[] only the probative evidence and reasonable inferences that support the post-conviction court's determination and do[] not reweigh the evidence or judge the credibility of the witnesses." State v. Holmes, 728 N.E.2d 164, 169 (Ind. 2000), cert. denied, 532 U.S. 1067 (2001). We accept the post-conviction court's findings of fact unless they are clearly erroneous, but we do not defer to the post-conviction court's conclusions of law. Id.

## II. Ineffective Assistance of Counsel

Young argues the post-conviction court erred in denying his claims of ineffective assistance of counsel. To succeed in contending ineffective assistance of trial or appellate counsel, a petitioner must satisfy a two-part test. Kubsch v. State, 934 N.E.2d 1138, 1147 (Ind. 2010) (citing Strickland v. Washington, 466 U.S. 668 (1984)).

> First, a defendant must show that counsel's performance was deficient. This requires a showing that counsel's representation fell below an objective standard of reasonableness and that counsel made errors so serious that counsel was not functioning as counsel guaranteed to the defendant by the Sixth Amendment. Second, a defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, meaning a trial where the result is reliable. To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is one that is sufficient to

undermine confidence in the outcome. Further, counsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption.

Id. (quotations and citations omitted).

## A. Motion to Suppress Evidence

Young argues he was denied effective assistance of counsel due to his trial counsel's failure to adequately argue for the suppression of evidence related to Young's arrest. Although Young's brief does not specifically articulate an argument that his trial counsel performed deficiently in relation to a motion to suppress evidence, he stated:

> [t]here was a reasonable likelihood that, had trial counsel moved to suppress the evidence on the basis of the unreasonableness of [Sergeant] McDonald's actions under the Indiana Constitution or the lack of reasonable suspicion under the Fourth Amendment, the trial or appellate courts would have ordered all evidence seized [sic] as a result of Young's seizure.

Brief of Petitioner-Appellant at 14-15. Thus, although he does not expressly address the first part of our two-part test for ineffective assistance of counsel claims, Young indirectly argues his counsel performed deficiently in that he did not move to suppress evidence arising from Young's arrest or did not assert the correct constitutional arguments in support of a motion to suppress.[2]

However, we need not determine which argument Young asserts in support of his counsel's deficiency or whether either constitutes a deficiency sufficient to meet the first

---

[2] In reviewing the record, it appears Young's trial counsel indirectly moved to suppress the evidence from Young's arrest at trial. Although his counsel did not formally state he was moving to suppress evidence, he asked for a directed verdict and proceeded to argue for various reasons that he did not "think there was a reason to pull them over. And certainly not to be searched." [Trial Court] Tr. at 46. In response, the prosecutor argued that the Sergeant McDonald's actions were proper and in conclusion stated, "for those reasons we would ask that the Motion to Suppress be denied." Id. at 47. The implicit argument made by Young's trial counsel appears to be that the evidence should have been suppressed because it was improperly obtained by Sergeant McDonald, and without the evidence obtained by Sergeant McDonald, a directed verdict would have been appropriate because no further evidence existed supporting Young's charges.

6

part of our ineffective assistance of counsel test because the second part of the two-part ineffective assistance of counsel test is determinative. The second part of our ineffective assistance of counsel test which Young must establish is that he was prejudiced by the purported deficiency in his counsel's performance. Young must show that, but for his counsel's allegedly deficient efforts, the outcome of his proceeding would have been different. Here, Young must establish that had his trial counsel performed reasonably, a motion to suppress evidence would have been granted and his convictions therefore would not stand.

Young argues the evidence arising from his encounter with Sergeant McDonald and subsequent arrest were improperly obtained under both the Indiana Constitution and the Fourth Amendment to the United States Constitution.[3] Both constitutions protect the privacy and possessory interests of individuals by prohibiting unreasonable searches and seizures. Haynes v. State, 937 N.E.2d 1248, 1251 (Ind. Ct. App. 2010) (quotation omitted), trans. denied.

1. The Fourth Amendment

Under Fourth Amendment jurisprudence, a lawful search generally requires a judicially issued search warrant, except in a few well-delineated exceptions. Fair v. State, 627 N.E.2d 427, 430 (Ind. 1993); Haynes, 937 N.E.2d at 1251. "However, a police officer may briefly detain a person for investigatory purposes without a warrant or probable cause if, based upon specific and articulable facts together with rational inferences from those facts, the official intrusion is reasonably warranted and the officer

---

[3] Young does not cite the particular provision of the Indiana Constitution he uses in support of his argument, Article 1, section 11; however, he does cite to Indiana case law articulating the balancing test to be applied in determining if the provision has been violated.

has a reasonable suspicion that criminal activity may be afoot." L.W. v. State, 926 N.E.2d 52, 55 (Ind. Ct. App. 2010) (quotation and citations omitted). Such investigation to determine if criminal activity is afoot is termed a "Terry stop," as it arose from the case Terry v. Ohio, 392 U.S. 1, 30 (1968). During a Terry stop, if an officer has a reasonable fear of danger, he or she may conduct a limited search of the outer clothing of a suspect to determine whether the suspect has any form of weapon. Johnson v. State, 710 N.E.2d 925, 928 (Ind. Ct. App. 1999). If contraband is discovered during a pat down for officer safety because it is either in plain view or upon a plain feel, seizure of such contraband is permissible. Id.

The State contends, however, that Fourth Amendment protections are not implicated here because, it argues, Sergeant McDonald's investigation resulted in a consensual encounter with Young insufficient to constitute a seizure for Fourth Amendment purposes. See Clarke v. State, 868 N.E.2d 1114, 1118 (Ind. 2007) ("Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred. It is clear that mere police questioning does not constitute a seizure. The Fourth Amendment is not triggered unless an encounter between a law enforcement officer and a citizen loses its consensual nature." (quotations and citations omitted)).

Here, once Sergeant McDonald's initial questioning ensued and he gathered additional information, reasonable suspicion arose for him to continue his investigation to determine whether criminal activity was afoot because the evidence reveals Young appeared under the influence of drugs or alcohol, was mumbling and shaking, would not look at Sergeant McDonald, and would not fully answer his questions. Once Young

8

stepped out of the vehicle, his contraband was in plain view and properly seized. Thus, the determinative issue for Fourth Amendment purposes is whether Sergeant McDonald's initial investigation triggered the application of the Fourth Amendment.

In Clarke, an officer investigated an anonymous report that drugs were being sold out of a parked car in front of an apartment building. The officer arrived, found a car matching the report's description in front of the building, activated her flashing lights, placed the spotlight on the vehicle so she could see inside, and approached on foot. The driver of the vehicle, Clarke, already had his license and registration extended for the officer when she made it to the side of the vehicle, and the officer asked what they were doing and how long they had been parked in front of the apartment. After observing nothing suspicious and discovering no outstanding warrants for either person in the vehicle, the officer asked Clarke if she could search the vehicle and Clarke consented. In searching the vehicle, officers found marijuana and cocaine. Id. at 1117.

Our supreme court addressed the issue of "whether a seizure occurred before [the officer] gained additional information sufficient to establish reasonable suspicion." The supreme court stated "[u]nder [Florida v. Bostick, 501 U.S. 429, 434-35 (1991)], the Fourth Amendment permits consensual interrogation 'as long as the police do not convey a message that compliance with the requests is required.'" Id. at 1119. The court then concluded, "[t]here is no evidence that Eastwood conveyed that message. Her mere presence as a uniformed law enforcement officer does not convert her questions into commands. Accordingly, there was no seizure before Clarke gave consent to the search, and the search established probable cause to arrest Clarke. This process did not violate the Fourth Amendment." Id. (citation omitted).

9

We find Clarke applicable here. Although Young argues Sergeant McDonald's initial investigation was not a consensual encounter, importantly, he points to no facts supported by the evidence demonstrating Sergeant McDonald's actions conveyed a message that compliance was required. Here, Sergeant McDonald was present and asked general questions about whether Young had rented the vehicle and if he had identification, but, similar to Clarke, no evidence supports Young's contention that Sergeant McDonald's actions escalated the investigation beyond a consensual encounter.

Young seems to argue that Sergeant McDonald's surveillance, which began at the gas station and continued for several moments after Young left the gas station, conveyed a message to Young that compliance with Sergeant McDonald was required. However, Young does not argue that he observed Sergeant McDonald's surveillance, and, thus, such surveillance is irrelevant to the question of whether Young felt required to comply with Sergeant McDonald. For these reasons, we conclude no Fourth Amendment violation occurred. Sergeant McDonald's initial investigative actions amounted to nothing more than a consensual encounter, once Young began acting nervously and avoiding communication with Sergeant McDonald reasonable suspicion arose to continue the investigation, and the discovery of contraband was not improper because it was in plain view.

## 2. Article 1, Section 11

Article 1, section 11 of the Indiana Constitution, although textually similar to the Fourth Amendment, is interpreted separately and independently. State v. Washington, 898 N.E.2d 1200, 1205-06 (Ind. 2008). "The determination of the reasonableness of a search and seizure under the Indiana Constitution turns 'on a balance of: 1) the degree of

concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs.'" Id. at 1206 (quoting Litchfield v. State, 824 N.E.2d 356, 361 (Ind. 2005)).

Young's argument focuses on the initial surveillance and investigation by Sergeant McDonald. His argument does not include any contention that Sergeant McDonald acted unreasonably by continuing the investigation after Young appeared intoxicated and shaky and failed to answer his questions or look at him, nor does he argue the discovery and seizure of contraband after the initial investigation went beyond what was reasonable for an officer in the circumstances. Thus, we will again narrow our constitutional analysis to Sergeant McDonald's initial investigation and questioning.

Here, none of these three factors garner significant weight. As Young points out, Sergeant McDonald did not receive a tip or report that the inhabitants of the vehicle were participating in criminal activity, nor did he discover any reason to be suspicious when observing the vehicle at the gas station. However, due to the high level of criminal activity in the area, Sergeant McDonald did have a general concern that the occupants of the vehicle could be involved in criminal activity. Further, once the vehicle left the gas station, Young's actions could have reasonably been interpreted as evading Sergeant McDonald's surveillance, which would give rise to suspicion that Young had reason to evade law enforcement.

Second, the degree of intrusion upon Young's activities was almost non-existent. His vehicle was already pulled over to the side of the road when Sergeant McDonald parked nearby and approached. The initial intrusion included nothing more than general

11

questions. Last, the extent of law enforcement needs was also minimal. If any need existed, it was the need to survey an area with a high level of criminal activity. Balancing these three factors, we cannot conclude Sergeant McDonald acted unreasonably and in violation of Article 1, section 11 of the Indiana Constitution.

Thus, Young did not receive ineffective assistance of counsel due to his trial counsel's purportedly deficient effort in moving to suppress evidence based on either the Fourth Amendment or Article 1, section 11. Even if such effort was deficient, the outcome of his proceeding would not have been any different without such deficiency. Young has failed to establish both parts of our two-part test for reviewing claims of ineffective assistance of counsel.

### B. Sentencing

Young argues he received ineffective assistance of trial counsel because his trial counsel made "unreasonable strategic decisions and fail[ed] to present mitigating evidence" at sentencing. Br. of Petitioner-Appellant at 15. During Young's sentencing, his attorney did not present any mitigating evidence. He did, however, argue that the State's aggravating evidence – evidence showing Young had several prior convictions – did not apply because the State failed to sufficiently demonstrate that the criminal history submitted as evidence was for the same Jermaine Young as the defendant. Young contends his attorney's argument was futile and he should have conducted an in-depth investigation into Young's personal background in order to discover mitigating circumstances. Young points to the testimony of his brother, Edward, presented in his post-conviction relief hearing stating that Young was kidnapped and assaulted at age five, "began exhibiting behavioral problems, entered the juvenile justice and foster care

systems, and received medication and out-patient treatment through a mental hospital." Id. at 17. He further points out medical reports indicating he is cognitively impaired.

Young is correct that a counsel's failure to investigate and present to the trial court potentially mitigating factors can constitute deficient performance. See McCarty v. State, 802 N.E.2d 959 (Ind. Ct. App. 2004), trans. denied. However, as Young acknowledges, his counsel did attempt to investigate his background. His counsel testified that he always asks clients for names of family members, but that Young did not give him any information concerning any of his family members. He also inquired into Young's mental health, and Young indicated he suffered from no mental health issues. Similarly, although Young contends an investigation by his trial counsel would have uncovered the medical reports presented at the post-conviction hearing indicating his impaired cognitive ability, Young does not establish that such evidence would have been discoverable at the time his trial counsel was preparing for sentencing. For these reasons, we cannot conclude Young's trial counsel performed deficiently during sentencing, and thus, he did not receive ineffective assistance of counsel in relation to sentencing.

## C. Double Jeopardy

Young argues he received ineffective assistance of counsel both at trial and on direct appeal to this court due to his counsels' failure to argue that convicting Young for both of his first two charges violated double jeopardy principles. Young's first two convictions were for dealing in cocaine as a Class A felony and possession of cocaine as a Class C felony. To convict Young of dealing in cocaine, the State had to prove beyond a reasonable doubt that Young knowingly or intentionally manufactured, financed the manufacture of, delivered, or financed the delivery of cocaine or a narcotic drug, or that

13

he possessed cocaine or a narcotic drug with the intent to do one of those things. Ind. Code § 35-48-4-1(a). Further, for the conviction to be a Class A felony, the State was required to establish that the amount of cocaine or narcotics involved weighed three grams or more. Ind. Code § 35-48-4-1(b)(1). To convict Young of possession of cocaine, the State had to prove beyond a reasonable doubt that Young knowingly or intentionally possessed cocaine or a narcotic drug. Ind. Code § 35-48-4-6(a). For the conviction to be a Class C felony, the State was required to establish that the amount Young possessed weighed three grams or more. Ind. Code § 35-48-4-6(b).

When Young was arrested, police officers confiscated approximately eighteen and a half grams of cocaine from Young's person and one and eight-tenths grams of cocaine from the vehicle. The State concedes that "where the same controlled substance is used to support both a dealing conviction and sentence and a possession conviction and sentence [sic] double jeopardy principles are implicated and the possession conviction and sentence are barred because possession of a substance is an inherently lesser-included offense to the dealing offense," Brief of the Appellee at 19 (citing Harrison v. State, 901 N.E.2d 635, 643-44 (Ind. Ct. App. 2009), trans. denied), and that at trial it failed to distinguish the cocaine found on Young's person and in the vehicle. Consequently, we conclude that, in regards to the dealing in and possession of cocaine convictions, both trial and appellate counsel performed deficiently by failing to raise a double jeopardy claim.

The State argues, however, that Young was not prejudiced by this double jeopardy violation because his sentences for his first two convictions were ordered served concurrently, and therefore the second prong of our ineffective assistance of counsel test

cannot be met. We disagree. Even though Young's effective sentence is no lengthier due to his conviction for possession of cocaine, the conviction remains on his record. That, in itself, constitutes the prejudice necessary for us to conclude Young received ineffective assistance of counsel. We therefore conclude Young was denied effective assistance of counsel due to the failure to raise a double jeopardy claim by both his trial and appellate counsel, and we remand to the trial court with instructions to vacate Young's conviction for possession of cocaine as a Class C felony.

Conclusion

Young has failed to establish he received ineffective assistance of counsel based on his trial counsel's performance in moving to suppress evidence and at sentencing. However, the failure of his trial and appellate counsel to raise a double jeopardy claim does establish ineffective assistance of counsel, and we therefore remand to the post-conviction court with instructions to vacate Young's possession of cocaine conviction. In all other respects, we affirm.

Affirmed in part and remanded in part with instructions.

BAILEY, J., and MATHIAS, J., concur.